**Inger Lisa (Davis) SCHIAVENZA, Plaintiff-Appellant,**

**v.**

**UNITED STATES of America, Defendant-Appellee.**

**No. 82–4700.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 13, 1983.

Decided Nov. 23, 1983.

---

Dolly Ares, San Jose, Cal., for plaintiff-appellant.

Jay W. Miller, Washington, D.C., for defendant-appellee.

Before ALARCON, CANBY, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

The taxpayer sought a deduction for intangible drilling costs on her 1977 tax return pursuant to section 263(c) of the Internal Revenue Code, 26 U.S.C. § 263(c) (1976), and Treasury Regulation § 1.612–4 (1965), 26 C.F.R. § 1.612–4 (1983). The Commissioner of Internal Revenue disallowed the $5,002 deduction and the taxpayer paid a deficiency of $1,129. Thereafter the taxpayer instituted an action in district court for refund of the deficiency assessment. The government moved for summary judgment on the grounds that (1) the money advanced by the taxpayer was neither actually used nor irretrievably committed for payment of intangible drilling costs, and (2) taxpayer was not an "operator" under the regulation and therefore not entitled to deduct any such costs. The district court granted summary judgment for the government on the basis of the first contention but did not address the issue of whether the taxpayer was an "operator." The taxpayer appeals. We affirm in part and reverse in part.

## BACKGROUND

In 1977 appellant taxpayer invested $5,000 in Nevada Energy and Heating Partnership (NEHP), a partnership organized by Harry Margolis to develop geothermal ener-

gy in Nevada. Margolis, on behalf of NEHP, entered into a series of four agreements with Hugh McLaughlin, a promoter-investor, and Management and Trust Company International, B.V. (Matrucoin) to develop geothermal energy on properties leased by McLaughlin, Inc. and by Merrimac Corporation. In accordance with the agreements Margolis transferred $2,000,000 in partnership contributions to Matrucoin to be used for drilling costs. Under the agreements, $140,000 of the $2,000,000 was to be advanced initially by Matrucoin to the driller with the remainder to be held available as needed for future expenses. The $140,000 was paid to the driller. However, it was advanced by Margolis rather than Matrucoin, and Margolis listed the $140,000 on NEHP's tax return as a loan to Matrucoin. No other amounts were paid to the driller by either NEHP or Matrucoin.

In October 1978, Margolis decided to terminate the project after the United States Department of Energy rejected a proposal for government-financed development of geothermal energy on the leased properties. NEHP and Matrucoin thereafter entered into an agreement to terminate the project, which provided for the repayment by Matrucoin of $1,850,000 to NEHP. In July 1979, Associated Advisors, a corporation owned by Margolis and other members of his law office, bought appellant's interest in NEHP for $4,657.50.

## DISCUSSION

Summary judgment is authorized where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Appellee has the burden of showing the absence of any genuine issue of fact, and the facts alleged must be viewed in the light most favorable to the opposing party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

## I

NEHP agreed to transfer $2,000,000 dollars to Matrucoin "solely and exclusively for the development of the McLaughlin mineral licensed acreage, to be devoted entirely to those costs which are denominated as intangible drilling costs." The parties contemplated that Matrucoin would initially advance $140,000 to McLaughlin for drilling test holes and that the remaining $1,860,000 would be held by Matrucoin for any future drilling costs incurred. Margolis, on behalf of NEHP, did in fact transfer the $2,000,000 to Matrucoin. The $140,000 was also advanced to McLaughlin as agreed upon; however, the $140,000 was sent directly from Margolis to McLaughlin and not advanced out of the $2,000,000 held by Matrucoin.

The district court concluded that the $140,000 advance was in addition to the $2,000,000 payment and that, since only the $140,000 was actually used for drilling costs, no part of the $2,000,000 qualified as an intangible drilling cost for income tax deduction purposes. However, according to Margolis, the $140,000 advance was not actually an additional amount but was a loan to be repaid by Matrucoin out of the $2,000,000. Margolis contends that while the agreement required Matrucoin to pay the $140,000 to the driller out of the $2,000,000, it was necessary for him to forward that sum to the driller from NEHP funds because the driller required immediate payment and Matrucoin could not make the necessary payments in time. NEHP deducted the $2,000,000 as intangible drilling costs and listed the $140,000 as a debt owed. There is no documentation in the record before us evidencing a repayment of the alleged loan. When the project terminated, NEHP and Matrucoin reached a settlement agreement providing for a refund of $1,850,000 of the $2,000,000 advanced. According to Margolis, each partner recovered the amount of his investment less his relative portion of the $140,000.[1] Appellant

---

1. Neither party has explained why only $1,850,000 was repaid instead of $1,860,000; however, the $10,000 discrepancy does not affect our determination of the issues presented in this case.

claims that the $140,000 was part of the $2,000,000 because it was a loan to be repaid from the $2,000,000 and that she is entitled to deduct her proportionate share of that amount.[2]

■ Many of the facts in this case are unclear or confused, and require further development before it can be determined whether taxpayer is entitled to any intangible drilling cost deduction. For instance, it cannot be determined from the record before us whether the additional $140,000 listed as a loan was ever repaid or what the present status of the alleged debt is. Nor is it clear whether the loan was made from the funds the taxpayer and other partners invested in NEHP or precisely what the relationship is between taxpayer's investment and the funds loaned. It does appear, however, that a genuine issue of fact exists as to whether some portion of the taxpayer's investment, i.e., all or some of her relative part of the $140,000, was used for intangible drilling costs. Thus, summary judgment was improperly granted on this issue.

## II

Although it is possible that the facts still to be adduced will ultimately support appellant's deduction of her relative portion of the $140,000, the record before us is sufficient to demonstrate that she is not entitled to deduct the remaining portion of her investment.

■ A taxpayer is only allowed to deduct "payments" for intangible drilling costs. *See Lillie v. Commissioner,* 45 T.C. 54 (1965), *aff'd,* 370 F.2d 562 (9th Cir.1966) (adopting tax court's reasoning). Payments occur when the amounts paid are irretrievably out-of-pocket. *Ernst v. Commissioner,* 32 T.C. 181 (1959). Advances that are nothing more than deposits for payment of future costs are deductible only when those services are performed. *Lillie,* 45 T.C. at 63; *see Scheidt v. Commissioner,* 82 T.C.M. (P–H) 2281 (1982).

■ The district court properly held that the balance of taxpayer's investment did not qualify as an expenditure under the statute. Matrucoin was not obligated to use the funds for intangible drilling cost and, with the possible exception of the $140,000, did not actually use them for that purpose. Thus, the balance of the funds constituted only a deposit against future costs and not a payment.

The district court relied primarily on *Scheidt v. Commissioner,* 82 T.C.M. (P–H) 2281 (1982). Scheidt also deducted monies advanced to a development company as intangible drilling costs on tax returns filed before any intangible drilling costs were actually incurred. In fact, no intangible drilling costs were ever incurred and taxpayer received a refund of his investment. The court found that taxpayer's advance was a "deposit" and not a "payment" because there was no requirement that the company actually incur intangible drilling costs. "The IDC [intangible drilling costs] deduction authorized by section 263(c) and section 1.612–4, Income Tax Regs., is for IDC payments, not for advances to a venture which might incur IDC payments." *Id.* at 2287.

Similarly, in this case there was no requirement that Matrucoin actually incur intangible drilling costs in the amount advanced. The agreement provided only that the funds were committed for payment of intangible drilling costs to the extent the funds were actually used. Taxpayer, however, argues that the advance to Matrucoin constituted a payment because she had no control over the disposition of the funds and no right to a refund. Thus, she claims, she was "irretrievably out-of-pocket," the amount paid. *Ernst v. Commissioner,* 32 T.C. at 186.

In *Ernst,* the taxpayer made payments in December for grain to be delivered the following spring. Taxpayer deducted the cost of the grain on the tax returns filed for the

---

2. Appellant asserts that the $140,000 was used for intangible drilling costs, but at least one pending lawsuit disputes the use of the funds.

Thus, if the $140,000 is found to be part of the $2,000,000, a triable issue of fact may also exist with respect to the actual use of the $140,000.

year the payments were made. The IRS determined that taxpayer was not entitled to the deductions until the grain was received. The tax court held that the deductions were allowable because taxpayer was irretrievably out-of-pocket the amount paid. "[T]he payments . . . were not in the nature of deposits to be reimbursed. . . . In return for [the] payments, the grain dealer was unconditionally obligated to deliver to petitioner the quantity of feed which the amounts received would pay for . . . ." *Id.* at 185–86.

Unlike *Ernst,* Matrucoin was not obligated to use the funds advanced by taxpayer or to provide services in consideration therefor. The agreement provided only that such funds "*as are utilized* for intangible drilling costs shall be irrevocably committed for such purposes." Furthermore, taxpayer did in fact receive a return of all or most of the unexpended portions of her investment. As noted in *Lillie* and *Scheidt,* this fact is significant in distinguishing between "payments" and "deposits." Each partner in NEHP received a refund of the unexpended portion of his partnership contribution through a sale of his partnership interest to either NEHP or Associated Advisors. In addition, Margolis stated that he believed, at the time he entered into the agreements, that any unused portions of the $2,000,000 would eventually be returned. Thus, the taxpayer was not irretrievably out-of-pocket.

Taxpayer also claims that the deductions are allowable because the advances were necessitated by compelling business reasons. Taxpayer relies on *Pauley v. United States,* 11 AFTR 2d 955 (S.D.Cal.1963), an unreported case. There the driller refused to drill without first receiving an advance for drilling costs. However, the issue in *Pauley* was not whether the advance constituted a "payment," but whether the deduction could be taken in a tax year prior to the actual incurring of the intangible drilling costs. Furthermore, *Pauley* is distinguisha-

ble because even if, as argued, the driller here refused to drill without prepayment, the prepayments at issue were not made directly to the driller, as in *Pauley,* but were instead payments to Matrucoin, which controlled the disposition of the funds.

The district court properly concluded that taxpayer's advance to Matrucoin was a deposit, not a payment, where the funds were not required to be used for intangible drilling cost, taxpayer did in fact receive a return of the unused portion of her advance, and the payments were not made directly to the driller to ensure that drilling would commence. Thus, summary judgment was properly granted as to the disputed deduction, aside from that portion representing taxpayer's proportionate share of the $140,000 we have considered earlier.

### III

The government argues that taxpayer was not an "operator" for the purposes of Treasury Regulation § 1.612–4(a) (1965) and thus was not entitled to *any* deduction for intangible drilling costs. Although the district court did not discuss this contention, the government requests us to affirm the grant of summary judgment as to the entire amount involved by holding in its favor on this issue.[3]

Only "operators" have the right to intangible drilling costs under section 263(c). An operator is "one who holds a working or operating interest in any tract or parcel of land either as a fee owner or under a lease or any other form of contract granting working or operating rights." Treas.Reg. § 1.612–4(a) (1965).

The term "interest" means an economic interest in the mineral in place. *See* Treas.Reg. § 1.614–1(a)(2), T.D. 6524 (1961); *C.I.R. v. Estate of Donnell,* 417 F.2d 106, 111 (5th Cir.1969). An economic interest exists where the taxpayer "has (1) 'acquired by investment, any interest in the [mineral] in place,' and (2) secured by legal relationship 'income derived from the extraction of

3. An appellate court may affirm summary judgment on any ground supported by the record, even if not relied upon by the district court

in its grant of summary judgment. *See, e.g., Bernard v. City of Palo Alto,* 699 F.2d 1023, 1023–24 n. 1 (9th Cir.1983).

the [mineral] to which he must look for a return of his capital.'" *Commissioner of Internal Revenue v. Southwest Exploration Co.,* 350 U.S. 308, 314, 76 S.Ct. 395, 398, 100 L.Ed. 837 (1956); *see* Treas.Reg. § 1.611–1(b)(1), T.D. 6500 (1960). *Southwest* involved a depletion deduction, not an intangible drilling cost deduction; however, the economic interest required is the same. *Donnell,* 417 F.2d at 111.

The government contends that taxpayer is not an "operator" because NEHP "possessed neither a fee nor leasehold interest, nor other contractual right to operate or develop the Merrimac properties" under the terms of the agreements. Taxpayer argues that she was an operator because she had, "by virtue of such investment transaction secured by formal legal relationships, obtained a right to share in the geothermal energy produced."

█ In this case, it appears that taxpayer might be able to qualify as an operator by showing that she had an operating or working interest in the geothermal wells on the leased properties. We cannot, however, determine from the record before us exactly what type of interest NEHP held in the properties nor the precise nature of the rights and obligations of NEHP and each partner to future income from the property. Certainly, the government as the moving party has not carried its burden of establishing that it is entitled to summary judgment when the facts are viewed in the light most favorable to appellant. Thus, it would have been inappropriate for the district court to have awarded summary judgment on this ground.

## CONCLUSION

We hold that triable issues of fact exist in determining whether taxpayer is entitled to deduct her relative share of the $140,000 and thus the district court's grant of summary judgment was inappropriate as to that part of her deduction. With respect to the balance of her deduction, we hold that the district court's conclusion that the rest of her investment was not irrevocably committed to intangible drilling costs was correct, and the award of summary judgment as to that portion of her deduction is affirmed.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.