RICHARD L. SOGG AND JOYCE SOGG, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Sogg v. Commissioner
Docket Nos. 11252-81, 11257-81, 11329-81, 13277-81, 13279-81, 13280-81, 13281-81, 13283-81, 15080-81, 15081-81, 15082-81, 15083-81, 15084-81, 15085-81, 15086-81 15087-81, 15088-81, 15089-81, 15090-81, 15091-81, 15092-81, 15093-81, 15094-81, 15095-81, 15096-81, 15097-81, 15275-81, 15936-81, 15937-81, 15939-81, 15940-81, 15941-81, 16262-81, 16263-81, 16264-81, 17707-81, 17708-81, 17709-81, 17711-81, 17761-81, 18727-81, 19110-81, 19111-81, 19198-81, 19199-81, 21934-81, 21948-81, 26541-81, 2177-82, 9532-82.
United States Tax Court
T.C. Memo 1986-464; 1986 Tax Ct. Memo LEXIS 146; 52 T.C.M. (CCH) 610; T.C.M. (RIA) 86464; 91 Oil & Gas Rep. 663; September 22, 1986. *146 Nevada Energy and Heating Partnership
Kenneth H. Reiserer, for the petitioners in docket Nos. 11252-81 and 19111-81. Maureen T. O'Connell, for the petitioners in docket No. 13281-81. Robert B. Coffin, for the petitioners in docket No. 15275-81. David M. Hellman, for the petitioners in docket No. 17707-81. *147 Peter D. Bakutes, for the petitioners in docket No. 19199-81. Robert B. Rosenstein, for the petitioners in docket No. 9532-82. Harry Margolis, for the petitioners in all other docket Nos. Neal O. Abreu, for the respondent. SCOTT MEMORANDUM OPINION SCOTT, Judge: This case is before the Court on respondent's Motion for Partial Summary Judgment, filed October 1, 1984, pursuant to Rule 121. [2] The record shows that respondent determined deficiencies in petitioners' Federal income tax and additions to tax for the years and in the amounts as set forth in Schedule A attached hereto. *148 Respondent bases his Motion for Partial Summary Judgment on the opinion of the United States Court of Appeals for the Ninth Circuit in Schiavenza v. United States,720 F.2d 1117 (9th Cir. 1983). Schiavenza was a partner in Nevada Energy and Heating Partnership (NEHP). She paid the tax determined against her by respondent and filed a suit for refund in the United States District Court for the Northern District of California. The District Court granted the Government's motion for summary judgment holding that the taxpayer was not entitled to deduct the distributive share of intangible drilling costs (IDC) claimed on her 1977 income tax return with respect to NEHP. The Circuit Court affirmed as to all of the claimed amounts except the taxpayer's distributive share of $140,000. Respondent contends that the agreed facts in this case are the same as those in the Schiavenza case and therefore we should conclude as a matter of law that none of petitioners in this case are entitled to deduct any part of their claimed distributive share of NEHP's claimed IDC except possibly their distributive shares of $140,000. Petitioners take the position that there are facts *149 which were not presented in the Schiavenza case which they can establish in the instant case which make the granting of a motion for partial summary judgment inappropriate. As petitioners further point out, the parties in this case are not the same as in the Schiavenza case so res judicata or collateral estoppel are inapplicable. Respondent does not contend that either res judicata or collateral estoppel applies but does argue that under the holding of the Circuit Court in the Schiavenza case there are no material facts in dispute and therefore his motion should be granted. At the direction of the Court, petitioners and respondent set forth the facts considered material and filed replies to the facts set forth by the others. Petitioners admitted all facts set forth by respondent but set forth numerous other facts which respondent did not admit but alleged to be immaterial. A summary judgment is proper only in a case in which there is no genuine issue as to any material fact. Giordano v. Commissioner,63 T.C. 462 (1975). We will therefore summarize the undisputed *150 facts and determine if other facts which petitioners assert they could establish are material to a proper determination of this case. All the individual petitioners in this case resided in California at the time of the filing of their petitions, except Jack Froom and Selma Froom, docket No. 16262-81, who resided in Massachusetts. Each individual petitioner filed individual income tax returns for the years in issue, and corporate petitioner Premier Chemical Corporation, a California corporation, filed corporate income tax returns for the calendar years 1975, 1976 and 1977, and corporate petitioner AB A-1 Truck & Equipment Rental Service, Inc., a California corporation, filed a corporate income tax return for its fiscal year ended February 28, 1978. In 1977 Mr. Harry Margolis, an attorney who specializes in international tax, arranged to form a partnership to be known as Nevada Energy and Heating Partnership to develop geothermal energy. Mr. Margolis drafted and had executed a document entitled "Mineral Lease" which recites that it was entered into in November of 1977 between Management and Trust Company International, B.V., a Netherlands corporation (Matrucoin), and Merrimac *151 Corporaion, a Nevada corporation (Merrimac). Pursuant to this agreement Matrucoin leased the mineral rights of certain Nevada lands owned by Merrimac. A document entitled "Assignment of Mineral Lease," also drafted by Mr. Margolis, recites that it is entered into in November of 1977 by and between Matrucoin and Hugh McLaughlin, Incorporated (McLaughlin), a Nevada corporation. This document states that Matrucoin assigns all right, title and interest which it acquired in the Merrimac mineral lease to McLaughlin. A document entitled "Agreement for Davelopment of Mineral Licenses" recites that it is entered into in November of 1977 by and between McLaughlin and Matrucoin. The document recites further that Matrucoin will advance funds to McLaughlin so that McLaughlin can proceed with development of the mineral-licensed property. [3] The document further recites: 6. Matrucoin hereby undertakes to advance to McLaughlin such funds as may be required by McLaughlin for the development of energy, water, and other mineral resources on the licensed acreage. The parties contemplate that Matrucoin will advance to McLaughlin $140,000 within five days from date for the purpose of drilling *152 test holes on the license acreage. * * * A document entitled "Agreement to Advance Funds and Finance Development of Mineral Resources" recites that it is an agreement entered into in November of 1977 by and between NEHP and Matrucoin. The agreement further recites that -- 1. NEH[P] will, within ten days from date, pay over to Matrucoin the sum of $2,000,000 (U.S.), to be utilized solely and exclusively for the development of the McLaughlin mineral licensed acreage, to be devoted entirely to those costs which are denominated as intangible drilling costs. * * * Such funds as are utilized for intangible drilling costs shall be irrevocably committed for such purposes * * *. [Emphasis added.] Under the terms of these agreements, NEHP advanced $2,000,000 in 1977 to Matrucoin. The amount of $140,000 was advanced directly by NEHP to McLaughlin rather than through Matrucoin. [4] The $140,000 constituted the only funds actually paid over to McLaughlin by either NEHP or Matrucoin. The $140,000 was listed on the NEHP books as a *153 loan to Matrucoin. McLaughlin subsequently paid over to the driller, Allen Drilling Company (Allen), the sum of $140,000 which was allegedly expended in drilling test holes, none of which produced successful results. Following the rejection in 1978 by the United States Department of Energy of a proposed Government-financed geothermal development project on the property, NEHP and Matrucoin entered into a further agreement. The document entitled "Agreement with Reference to Geothermal Explorations" recites that it is entered into on the 26th day of December, 1978, by and between NEHP and Matrucoin. The agreement recites further that -- 2. Matrucoin acknowledges that the undertakings it made with reference to geothermal development in the State of Nevada and upon which NEHP relied in advancing $2,000,000 to Matrucoin in the year 1977, have in fact not been accurate. * * * * * * 7. The agreements of the parties of November 1977 are hereby brought to an end. * * * 8. Matrucoin must pay NEHP ONE HUNDRED THOUSAND DOLLARS ($100,000.00) *154 as a down payment for the rights being acquired by Matrucoin from NEHP before the end of 1978. In addition thereto, Matrucoin must pay NEHP no less than ONE MILLION SEVEN HUNDRED FIFTY THOUSAND DOLLARS ($1,750,000.00) additional under the terms and conditions of this agreement. * * * Pursuant to this agreement petitioners received refunds of their investments with the exception of their allocable shares of the $140,000. Section 263(a)[5] sets forth the general rule with respect to the nondeductibility of amounts "paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate." Section 263(c), [6] however, provides an exception to the general rule by directing the Secretary to draft regulations granting "the option to deduct as expenses intangible drilling and development costs in the case of oil and gas wells * * *." Section 1.612-4(a), Income Tax Regs., provides in pertinent part as follows: (a) Option *155 with respect to intangible drilling and development costs. In accordance with the provisions of section 263(c), intangible drilling and development costs incurred by an operator (one who holds a working or operating interest in any tract or parcel of land either as a fee owner or under a lease or any other form of contract granting working or operating rights) in the development of oil and gas properties may at his option be chargeable to capital or to expense. This option applies to all expenditures made by an operator for wages, fuel, repairs, hauling, supplies, etc., incident to and necessary for the drilling of wells and the preparation of wells for the production of oil or gas. Such expenditures have for convenience been termed intangible drilling and development costs. * * * *156 NEHP elected to claim the $2,000,000 advance to Matrucoin as an IDC expense. This partnership election was binding on the NEHP partners. Section 703(b). The alleged IDC transfer was made in 1977 but no drilling activity whatsoever took place until 1978. Therefore, petitioners seek to deduct a prepayment of IDC. Respondent contends that the undisputed facts bring this case clearly within the holding of the United States Court of Appeals for the Ninth Circuit in Schiavenza v. United States,supra. It is respondent's position that the Ninth Circuit concluded that the written documents controlled the nature of the payments in this case and that these documents clearly show that of the $2,000,000 advanced only $140,000 can possibly be a payment of IDC since the remainder was never paid over to McLaughlin. Respondent points out that pursuant to the agreement between NEHP and Matrucoin the remaining $1,860,000 which was disallowed as a deduction was not irrevocably committed to IDC. Respondent argues that the facts which petitioners contend they could establish, with respect to records of NEHP and the intent of the various partners and others that the entire *157 $2,000,000 be irrevocably committed for IDC, are immaterial under the holding of the Ninth Circuit. All the controverted facts deal with records of NEHP or intent of the partners, the partnership, and Matrucoin. If such facts are not material under the holding of the Ninth Circuit in the Schiavenza case, respondent is entitled to have his Motion for Partial Summary Judgment granted. The Ninth Circuit reversed the District Court's summary conclusion [7] that the $140,000 was in addition to the $2,000,000 so that none of the $2,000,000 was deductible IDC. Rather, the appellate court concluded that the facts were unclear as to whether the $140,000 was in fact a loan and whether that amount was in fact advanced from funds invested by NEHP partners. The Ninth Circuit thus determined that granting summary judgment with respect to the $140,000 portion was inappropriate because "it is possible that the facts still to be adduced will ultimately support appellant's deduction of her relative portion of the $140,000 * * *." Schiavenza v. United States,supra at 1120. *158 This Court follows the decision of the courts of appeals to which appeal of the case under consideration lies. Golsen v. Commissioner,54 T.C. 742 (1970), affd. on other grounds 445 F.2d 985 (10th Cir. 1971). Here, the appeal of all petitioners other than the Frooms would be to the Ninth Circuit. If, as respondent contends, the agreed facts in this case require a conclusion that petitioners are not entitled to an IDC deduction for their proportionate part of the $1,860,000 under the holding of the Ninth Circuit, any additional facts which petitioners might be able to establish would be immaterial. The burden of showing that there is no genuine issue of material facts is on respondent as he is the moving party. Espinoza v. Commissioner,78 T.C. 412, 416 (1982). In our opinion, he has made this showing both under the holding of the Ninth Circuit in the Schiavenza case and our holding in other cases. In its opinion, the Ninth Circuit states (at *159 1120-1121): The district court properly held that the balance of taxpayer's investment did not qualify as an expenditure under the statute. Matrucoin was not obligated to use the funds for intangible drilling cost and, with the possible exception of the $140,000, did not actually use them for that purpose. Thus, the balance of the funds constituted only a deposit against future costs and not a payment. * * * Similarly, in this case there was no requirement that Matrucoin actually incur intangible drilling costs in the amount advanced. The agreement provided only that the funds were committed for payment of intangible drilling costs to the extent the funds were actually used. * * * * * * The district court properly concluded that taxpayer's advance to Matrucoin was a deposit, not a payment, where the funds were not required to be used for intangible drilling cost, taxpayer did in fact receive a return of the unused portion of her advance, and the payments were not made directly to the driller to ensure that drilling would commence. Thus, summary judgment was properly granted as to the disputed deduction, aside from that portion representing taxpayer's proportionate share *160 of the $140,000 we have considered earlier. The facts relied upon by the Ninth Cicuit are present here, and the clear import of its opinion is that other facts which petitioners in this case claim they could establish would not be material. Respondent's Motion for Partial Summary Judgment is also supported by Keller v. Commissioner,79 T.C. 7 (1982), affd. 725 F.2d 1173 (8th Cir. 1984). In Keller we concluded that to deduct the prepayment of IDC there must be a payment rather than a nondeductible deposit and the deduction must not materially distort income. In that case we stated (at 28-29): Unquestionably, the first part of respondent's test, i.e., that the expenditure must be a payment rather than a refundable deposit, is a sine qua non for deductibility in any context. * * * * * * The term "payment" has a special meaning for tax purposes. It does not mean a simple transfer of money by a taxpayer. Ernst v. Commissioner,32 T.C. 181 (1959). A transfer of money pursuant to a binding contract also is not enough. Owens v. Commissioner,64 T.C. 1, 18 (1975), *161 affd. in part and revd. in part 568 F.2d 1233 (6th Cir. 1977). A payment occurs only when the taxpayer's money is "irretrievably out of pocket." Ernst v. Commissioner,supra at 186. Pursuant to the "Agreement to Advance Funds and Finance Development of Mineral Resources," only the funds actually expended for IDC are considered irretrievably committed, and thus, of the $2,000,000 claimed as IDC by NEHP, no part of the $1,860,000 is deductible. A further reason for granting respondent's motion is that the agreed facts also conclusively establish that no more than $140,000 was actually paid to the driller as IDC expense. Therefore, the advances by NEHP cannot qualify for the IDC deductions. As stated in Cottingham v. Commissioner,63 T.C. 695, 706 (1975): [W]e interpret section 1.612-4(a) of the regulations, supra, to mean that the election under section 263(c) is available only respecting expenditures actually made for drilling and developing or completing a well on property in which the operator has a working or operating *162 interest * * *. [Emphasis added.] Based on both the Schiavenza case and our holding in Keller v. Commissioner,supra, and Cottingham v. Commissioner,supra, we grant respondent's Motion for Partial Summary Judgment as to the Frooms as well as the other petitioners. An appropriate order will be entered.
Schedule A
Addition to
Tax Under
Petitioner
Year
Deficiency
Sec. 6651(a)
Richard L. Sogg and
1977
$37,879.60
Joyce Sogg
Ondrej Kojnok and
1977
3,152.00
Amalia Kojnok
Michael M. Gurdin and
1977
16,233.00
Marlene Gurdin
Harold B. Isen and
1977
7,621.00
Anita K. Isen
Floyd Biava and
1977
21,014.00
Lili Biava
Robert W. Fuller
1977
6,540.00
Donald F. Cox and
1977
51,976.00
Dianne Cox
Collin H. Dong and
1977
18,254.00
Mildred V. Dong
Thomas C. Lauer and
1974
1,521.00
Mary Jacquelyn Lauer
1977
7,552.00
$377.60
Alia Johnson Fuller
1977
1,954.00
Charles L. Carter and
1977
4,165.00
Becky E. Carter
Mason A. Roberson, Deceased,
1977
26,075.00
2,503.61
and Doris B. W. Roberson,
Surviving Spouse
Randall T. McNamara and
1981
9,154.00
Sue W. McNamara
Robert Larzelere
1977
4,399.00
Kenneth P. Carr and
1977
1,291.00
Virginia L. Carr
Edward B. Tooper and
1977
4,608.00
Virginia O. Tooper
Robert R. Curtis, Jr.
1977
1,235.00
Michael L. Corman
1977
2,333.00
Premier Chemical Corp.
1975
2,474.00
1976
4,260.00
1977
17,500.00
John Stephen Felch and
1977
3,644.00
Nancy J. Felch
Kenneth E. Smith and
1977
2,466.00
Mary Jane Smith
Charles J. Ingrasci
1977
3,687.00
William Warren Bartley
1977
2,435.00
Elaine Cronin
1977
2,635.00
Thomas M. Meehan and
1977
4,224.00
Georgina A. Meehan
Gordon S. Stirling and
1977
19,158.00
Sherma R. Stirling
Robert B. Coffin and
1977
7,264.00
Claire I. Coffin
Earl Wendell Chambers and
1977
2,314.00
Anne Maryly Chambers
Vinton Freedley
1977
10,911.00
Morty R. Lefkoe and
1977
12,235.00
Arlene B. Lefkoe
John Vincent Drucker and
1977
12,437.00
Wendy Drucker
Mark D. Schiavenza
1977
4,507.00
Jack Froom and Selma Froom
1977
7,461.00
97.00
Michelle J. McGinnis
1977
1,094.00
William G. Clements
1977
1,428.00
Gladstein Trust,
1977
8,481.00
Robert Dunnett, et al.,
Trustees
Marcia L. Martin
1977
4,824.00
A. Stewart Esposito and
1977
3,166.00
Linda Esposito
Howard J. Sherman and
1977
15,437.00
772.00
Camilla J. Sherman
Gary P. Grace and
1977
12,771.50
1,168.31
Marie J. Grace
Hillard L. Torgan and
1977
4,854.00
Nancy G. Torgan
Leonard J. Liccardo
1977
24,600.00
3,690.00
Verne M. Walton and
1977
49,652.00
Patricia A. Walton
John A. McMillen
1977
5,946.00
Ronald H. Adolphson
1977
5,789.00
Meyer Zeiler and
1977
10,807.00
Floria Zeiler
John E. Thorne
1977
69,092.00
Erwin G. Lang
1977
39,640.50
AB A-1 Truck & Equipment
FYE
24,001.00
6,000.00
Rental Service, Inc.
2/28/78
Richard and Linda Aikman
1977
5,525.00
*163 Footnotes
1. Cases of the following petitioners are consolidated herewith: Richard L. Sogg and Joyce Sogg, docket No. 11252-81; Ondrej Kojnok and Amalia Kojnok, docket No. 11257-81; Michael M. Gurdin and Marlene Gurdin, docket No. 11329-81; Harold B. Isen and Anita K. Isen, docket No. 13277-81; Floyd Biava and Lili Biava, docket No. 13279-81; Robert W. Fuller, docket No. 13280-81; Donald F. Cox and Dianne Cox, docket No. 13281-81; Collin H. Dong and Mildred V. Dong, docket No. 13283-81; Thomas C. Lauer and Mary Jacquelyn Lauer, Docket No. 15080-81; Alia Johnson Fuller, docket No. 15081-81; Charles L. Carter and Becky E. Carter, docket No. 15082-81; Mason A. Roberson, Deceased, and Doris B. W. Roberson, Surviving Spouse, docket No. 15083-81; Randall T. McNamara and Sue W. McNamara, docket No. 15084-81; Robert Larzelere, docket No. 15085-81; Kenneth P. Carr and Virginia L. Carr, docket No. 15086-81; Edward B. Tooper and Virginia O. Tooper, docket No. 15087-81; Robert R. Curtis, Jr., docket No. 15088-81; Michael L. Corman, docket No. 15089-81; Premier Chemical Corp., docket No. 15090-81; John Stephen Felch and Nancy J. Felch, docket No. 15091-81; Kenneth E. Smith and Nancy J. Felch, docket No. 15091-81; Kenneth E. Smith and Mary Jane Smith, docket No. 15092-81; Charles J. Ingrasci, docket No. 15093-81; William Warren Bartley, docket No. 15094-81; Elaine Cronin, docket No. 15095-81; Thomas M. Meehan and Georgina A. Meehan, docket No. 15096-81; Gordon S. Stirling and Sherma R. Stirling, docket No. 15097-81; Robert B. Coffin and Claire I. Coffin, docket No. 15275-81; Earl Wendell Chambers and Anne Maryly Chambers, docket No. 15936-81; Vinton Freedley, docket No. 15937-81; Morty R. Lefkoe and Arlene B. Lefkoe, docket No. 15939-81; John Vincent Drucker and Wendy Drucker, docket No. 15940-81; Mark D. Schiavenza, docket No. 15941-81; John Froom and Selma Froom, docket No. 16262-81; Michelle J. McGinnis, docket No. 16263-81; William G. Clements, docket No. 16264-81; Gladstein Trust, Robert Dunnett, et al., Trustees, docket No. 17707-81; Marcia L. Martin, docket No. 17708-81; A. Stewart Esposito and Linda Esposito, docket No. 17709-81; Howard J. Sherman and Camilla J. Sherman, docket No. 17711-81; Gary P. Grace and Marie J. Grace, docket No. 17761-81; Hillard L. Torgan and Nancy G. Torgan, docket No. 18727-81; Leonard J. Liccardo, docket No. 19110-81; Verne M. Walton and Patricia A. Walton, docket No. 19111-81; John A. McMillen, docket No. 19198-81; Ronald H. Adolphson, docket No. 19199-81; Meyer Zeiler and Floria Zeiler, docket No. 21934-81; John E. Thorne, docket No. 21948-81; Erwin G. Lang, docket No. 26541-81; AB A-1 Truck & Equipment Rental Service, Inc., docket No. 2177-82; Richard and Linda Aikman, docket No. 9532-82.↩
2. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. The property to be developed encompassed not only that which was assigned from Matrucoin but other property licensed by McLaughlin as well.↩
4. The $140,000 was advanced in two installments: A $50,000 check dated December 12, 1977 and a $90,000 check dated December 29, 1977.↩
5. Unless otherwise stated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. ↩
6. Sec. 263(c) was amended by sec. 402(e) of Pub. L. 95-618, 92 Stat. 3203, "1978 Energy Tax Act," with respect to wells commenced on or after October 1, 1978 for taxable years ending on or after such date, to allow the option to deduct IDC with respect to geothermal wells. In this case, however, the Ninth Circuit had previously affirmed a Tax Court decision holding that geothermal steam fell within the meaning of "gas" for both depletion and IDC purposes. Reich v. Commissioner,454 F.2d 1157 (9th Cir. 1972), affg. 52 T.C. 700↩ (1969).
7. The District Court in its opinion did not discuss the second ground for respondent's motion for summary judgment, that the taxpayer was not an "operator" within sec. 1.6124(a), Income Tax Regs.↩, and therefore was not entitled to an IDC deduction at all. The Ninth Circuit refused to affirm summary judgment for the entire amount on the basis of this issue concluding that the Government had not carried its burden of proof. For purposes only of respondent's Motion for Partial Summary Judgment, respondent assumes that NEHP is an "operator."