ANN F. NEUHOFF, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9650–76.     Filed October 7, 1980.

*Jimmy L. Heisz* and *Neil J. O'Brien,* for the petitioner.
*Barry M. Bloom,* for the respondent.

GOFFE, *Judge*: The Commissioner determined deficiencies in petitioner's Federal income tax for the taxable years 1971 and 1972 in the respective amounts of $18,899.75 and $5,267.69.

The issues for our decision are:

(1) Whether the Consent Fixing Period of Limitation Upon Assessment of Income Tax (Form 872) signed by petitioner operated, under section 6501(c)(4), I.R.C. 1954,[1] to prevent the period of limitations for the taxable years in issue from expiring prior to the issuance of the statutory notice of deficiency; and

(2) Whether petitioner's basis in her community one-half interest in certain U.S. Treasury bonds (flower bonds) is, under section 1014, the fair market value or the par value for purposes of computing her gain or loss on the sale of such bonds in 1970. Our decision with respect to issue No. 2 will determine whether petitioner had a short-term capital loss which could be carried forward to the taxable year 1971. In addition, our decision will correspondingly determine petitioner's taxable income for the taxable year 1972 due to the fact that she utilized income averaging for such year.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Mrs. Ann F. Neuhoff, petitioner, resided in Dallas, Tex., at the

---

[1]All section references are to the Internal Revenue Code of 1954, as amended.

time she filed her petition in the instant case. She timely filed her individual Federal income tax returns for the taxable years 1971 and 1972 with the Internal Revenue Service Center at Austin, Tex.

Petitioner's husband, Joseph O. Neuhoff, Sr., died in Texas on May 27, 1970. At the time of his death, he and petitioner owned 3-percent U.S. Treasury bonds (flower bonds) which mature on February 15, 1995. The flower bonds were eligible for redemption at their par value to the extent they were used in payment of Federal estate tax. The par value of these bonds was $1 million at the date of Mr. Neuhoff's death, and their fair market value was $655,000 plus accrued interest of $6,464.09.

Because petitioner and her husband acquired the flower bonds during the time of their marriage, petitioner had a vested community property interest in the bonds at the time of acquisition under the laws of Texas. Consequently, in July 1970, one-half of the flower bonds were distributed to petitioner and, at the time of distribution, the bonds she received had a par value of $500,000.

On July 17, 1970, petitioner sold the flower bonds distributed to her for $335,089.94. At the time of the sale, the Federal estate tax return of her husband's estate had not been filed. Petitioner reported a short-term capital gain of $10,089.94 from the sale of the bonds as follows:

| | |
|---|---|
| Gross sales price | $335,089.94 |
| Cost or other basis | 325,000.00 |
| Gain | 10,089.94 |

Following the sale of her flower bonds, the Federal estate tax return for Mr. Neuhoff's estate was filed, and his one-half community interest in the flower bonds was included in his gross estate at a value of $452,452.50, computed as follows:

| | |
|---|---|
| Flower bonds valued at par in payment of Federal estate tax | $376,500.00 |
| Flower bonds valued at quoted fair market value at date of death and not surrendered in payment of Federal estate tax—$123,500 par value | 75,952.50 |
| Total value included in gross estate | 452,452.50 |

After the filing of the Federal estate tax return, petitioner filed an amended income tax return for the taxable year 1970

and claimed a short-term capital loss in the amount of $117,362.56 resulting from her sale of the flower bonds in July 1970. In calculating the loss, petitioner used the value of the flower bonds which were included in her husband's gross estate as her basis as follows:

| | |
|---|---:|
| Substituted basis for flower bonds.................. | $452,452.50 |
| Sale price of flower bonds............................ | 335,089.94 |
| Short-term capital loss claimed...................... | (117,362.56) |

Subsequently, petitioner carried forward and utilized $70,772.78 of the above short-term capital loss in computing her Federal income tax for the taxable year 1971.

On March 11, 1974, petitioner appointed Mr. James H. Dunlap as her attorney-in-fact to represent her before any Office of the Internal Revenue Service with respect to its examination of her income tax returns for the taxable years 1970, 1971, and 1972. Mr. Dunlap, a certified public accountant, prepared petitioner's Federal income tax returns for the taxable years covered by the power of attorney. Under the power of attorney, Mr. Dunlap was authorized to receive confidential information and had full power to execute consents extending the statutory periods for assessment and collection of taxes.

On March 25, 1975, the Internal Revenue Service requested Mr. Dunlap to execute a consent to extend to December 31, 1975, the period of limitations on assessment for the taxable year 1970. Mr. Dunlap executed the consent on March 31, 1975, and the Internal Revenue Service received the consent from Mr. Dunlap on April 1, 1975, at which time it was executed on behalf of the Commissioner.[2] On June 10, 1975, the Internal Revenue Service requested Mr. Dunlap to execute an additional consent to extend to December 31, 1976, the period of limitations for the taxable year 1970. Mr. Dunlap executed the consent in the same manner as he had done previously. Also on June 10, 1975, the Internal Revenue Service requested petitioner to execute consents extending the periods of limitation to December 31, 1976,

---

[2]The period of limitations for the taxable year 1970 had been previously extended to June 30, 1975, by agreement of Mr. Dunlap and the Internal Revenue Service.

and April 15, 1977, for the taxable years 1971 and 1972, respectively.[3] Having received no response from petitioner, the Internal Revenue Service, on September 4, 1975, requested petitioner to either sign the consent extending the period of limitations for the taxable years 1971 and 1972 or advise it that she did not intend to agree to an extension. The text of the communication to petitioner is as follows:

> We recently wrote you that the period during which the law would permit assessment of any tax due for the above year will soon end. We asked that you extend this period by signing and returning both copies of a consent form we enclosed.
>
> Since we have no record of a reply, we now ask that you either sign and return the forms, or let us know that you do not intend to do so. If we do not hear from you within a few days, we will have no alternative but to act on your return before the statute of limitations expires.
>
> Thank you for your cooperation.
>
> Sincerely yours,<br>[signature indicated]<br>A. W. McCANLESS<br><em>District Director</em>

On September 5, 1975, petitioner, who understood the effect of signing the consents, executed the consents relating to the taxable years 1971 and 1972 and they were received and executed on behalf of the Commissioner on September 9, 1975. Mr. Dunlap was unaware of petitioner's action with respect to the consents she executed on September 5, 1975.

On July 28, 1976, respondent mailed a statutory notice of deficiency to petitioner for the taxable years 1971 and 1972 in which he determined that petitioner failed to establish that she was entitled to a short-term capital loss carryover from the taxable year 1970 to the taxable year 1971 and accordingly increased her taxable income for the taxable year 1971 by $35,636.39. Correspondingly, respondent increased petitioner's taxable income for the taxable year 1972 because she utilized income averaging for that taxable year.

## OPINION

The first issue for our decision is whether the period of

---

[3]The period of limitations for the taxable year 1971 had been previously extended to Dec. 31, 1975, by agreement of Mr. Dunlap and the Internal Revenue Service on Apr. 14, 1975.

limitations on assessment for the taxable years in issue expired prior to the Commissioner's issuance of the statutory notice of deficiency.

Petitioner contends that the Internal Revenue Service, by obtaining consents to extend the period of limitations without notifying her representative, Mr. Dunlap, violated the Internal Revenue Service Statement of Procedural Rules (SPR herein), 26 C.F.R. sec. 601.501(a)(1976), which provides: "Any notice or other written communication (or a copy thereof) required or permitted to be given to a taxpayer in any matter before the Revenue Service shall be given to the taxpayer's recognized representative." Accordingly, petitioner argues that the failure of the IRS to notify Mr. Dunlap, petitioner's recognized representative, rendered the consents which she signed ineffective to extend the periods of limitations and, therefore, that the statutory notice was issued after the statutory period prescribed for assessment. We disagree. As respondent points out, SPR 26 C.F.R. sec. 601.506(a) (1967), also provides that "In no event will failure to give notice or other written communication to a taxpayer's representative affect its validity which is to be determined solely under the provisions of the Internal Revenue Code." Section 6501(c)(4) of the Code specifically provides for the means of extending the period prescribed for assessment and collection of tax:

EXTENSION BY AGREEMENT.—Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

The record before us shows that respondent notified petitioner of the necessity of either agreeing to an extension of the statutory period or informing respondent that there would be no further agreement with respect to extensions. Petitioner, who was aware of the implications of signing the consents (Form 872), answered respondent's request by agreeing to an extension with respect to the taxable years in issue. The means utilized in obtaining her agreement to extend the statutory periods, under the facts of the instant case, comport with the provisions of not only section 6501(c)(4) but also with the limiting language

contained and relied upon by respondent in SPR 26 C.F.R. sec. 601.506(a)(1967).

Petitioner next contends that respondent's failure to notify Mr. Dunlap violates the provisions of section 2 of Pub. L. 89–332, which has been codified at 5 U.S.C. sec. 500(f), which provides:

When a participant [taxpayer] in a matter before an agency [Internal Revenue Service] is represented by an individual qualified under subsection (b) or (c) of this section, a notice or other written communication required or permitted to be given the participant in the matter shall be given to the representative in addition to any other service specifically required by statute.

The provisions of 5 U.S.C. sec. 500 et seq., were enacted to enable, as far as possible, persons to be represented by any attorney in good standing in matters before Federal agencies and to require the agencies to deal with a representative qualified in the manner provided by Congress. H. Rept. 1141, 89th Cong., 1st Sess. (1965), U.S. Code Cong. & Adm. News 4170 (1965). See *Houghton v. Commissioner*, 48 T.C. 656, 664 (1967); *Alfieri v. Commissioner*, 60 T.C. 296, 299 (1973), affd. without opinion 487 F.2d 1393 (2d Cir. 1973). While respondent failed to comply with 5 U.S.C. sec. 500(f) by not notifying petitioner's legal representative with respect to the consent, we find such failure to be harmless under the facts of this case. The consents signed by petitioner which extended the statutory periods for assessment were valid on their face. Petitioner testified that she assumed that by signing the consent form the statutory periods with respect to the taxable years in issue would be extended. In addition, there is nothing in the record before us which would indicate that the Internal Revenue Service obtained the consents from petitioner by deception. Because the consents were valid on their face, the Internal Revenue Service was justified in relying upon their validity and treating them as effective extensions of the statutory periods within which to make assessments. See *Hollman v. Commissioner*, 38 T.C. 251, 260 (1962). By relying upon the consents, it was unnecessary for the Internal Revenue Service to proceed with an assessment as if petitioner had refused to consent to an extension. See *Foutz v. Commissioner*, 24 T.C. 1109, 1112 (1955); cf. *Stearns Co. v. United States*, 291 U.S. 54, 61(1934). While petitioner's representative was authorized to act on petitioner's behalf with respect to an extension, we see nothing which precluded petitioner from knowingly acting in her own behalf. Accordingly, the periods of limitations

on assessment with respect to the taxable years in issue had not expired at the time the Commissioner issued his statutory notice of deficiency.

That is not to say we condone the Internal Revenue Service's obtaining consents from a taxpayer who is represented by an attorney-in-fact. We can see opportunities for abuse if an unsuspecting taxpayer executed a document tendered by the Internal Revenue Service which might be detrimental to the taxpayer's rights or interest because the taxpayer's representative was not consulted. That does not happen to be the situation here. Cf. *Copeland v. Brennan*, 414 F. Supp. 644 (D. D.C. 1975). Moreover, 5 U.S.C. sec. 500(f) does not modify the Internal Revenue Code provisions specifying the manner in which the period of limitations may be extended. *Alfieri v. Commissioner*, *supra*.

Having decided the issue concerning the statute of limitations, the next issue is whether petitioner's basis in her community one-half interest in certain United States Treasury bonds (flower bonds) was their fair market value at the time of her husband's death, or their par value.

Prior to the death of her husband, petitioner and Mr. Neuhoff purchased flower bonds having a par value of $1 million which were eligible for redemption at par value in payment of Federal estate tax. At the time of Mr. Neuhoff's death, the flower bonds had a total fair market value of $655,000 and a par value of $1 million. Petitioner received one-half of the bonds as her share of community property which she then sold for $335,089.94 on July 17, 1970. On her Federal income tax return for the taxable year 1970, petitioner reported a short-term capital gain in the amount of $10,089.94 from the sale of her flower bonds, computed as follows:

| | |
|---|---|
| Gross sales price | $335,089.94 |
| Cost or other basis | 325,000.00 |
| Gain | 10,089.94 |

The Federal estate tax return for Mr. Neuhoff's estate was then filed wherein his community one-half interest in the flower bonds was included in his gross estate at a value of $452,452.50 computed as follows:

| | |
|---|---|
| Flower bonds valued at par in payment of Federal estate tax | $376,500.00 |
| Flower bonds valued at quoted fair market value at date of death and not surrendered in payment of Federal estate—$123,500 par value | 75,952.50 |
| Total | 452,452.50 |

Petitioner then filed an amended Federal income tax return for the taxable year 1970 in which she reported a short-term capital loss from the sale of her flower bonds in the amount of $117,362.56. She computed the loss by taking the difference between the sales price, i.e., $335,089.94, and the basis in the bonds which she calculated to be the same as the value of the bonds included in her husband's gross estate, i.e., $452,452.50. Petitioner then carried forward and utilized $70,772.78 of the claimed short-term capital loss in computing her Federal income tax for the taxable year 1971.

Petitioner takes the position that her basis in the flower bonds distributed to her as her community one-half interest is equal to the amount ($452,452.50) includable in her husband's Federal estate tax return. Petitioner bases her position upon section 1014(a) which provides that the basis of property in the hands of a person acquiring the property from a decedent or to whom the property passes from a decedent shall be the fair market value of the property at the date of decedent's death. Consequently, petitioner argues that the basis of her flower bonds is the fair market value of such bonds as determined in accordance with section 1.1014–3(a), Income Tax Regs., which in part provides: "The value of property as of the date of decedent's death as appraised for the purpose of the Federal estate tax or the alternative value as appraised for such purpose, whichever is applicable, shall be deemed to be its fair market value."

While respondent disagrees with petitioner's position, he obviously agrees with her arguments which relate to section 1014(a). Respondent contends that section 1014(a) is applicable in determining petitioner's basis in her flower bonds and, in so doing, argues that section 1014(b)(6) governs the facts in the instant case. Section 1014(b) provides in pertinent part:

(b) PROPERTY ACQUIRED FROM THE DECEDENT.—For purposes of subsection (a), the following property shall be considered to have been acquired from or to have passed from the decedent:

\*    \*    \*    \*    \*    \*    \*

(6) In the case of decedents dying after December 31, 1947, property which represents the surviving spouse's one-half share of community property held by the decedent and the surviving spouse under community property laws of any State, territory, or possession of the United States or any foreign country, if at least one-half of the whole of the community interest in such property was includible in determining the value of the decedent's gross estate under chapter 11 of subtitle B (section 2001 and following, relating to estate tax) or section 811 of the Internal Revenue Code of 1939;

Respondent argues that the flower bonds petitioner received and sold following her husband's death represent her one-half share of community property held by them under the community property laws of Texas. Therefore, respondent takes the position that, because at least one-half of the flower bonds were included in valuing her husband's gross estate, petitioner is entitled to a stepped-up basis in her one-half interest in the flower bonds which were distributed to her under the provisions of section 1014(b)(6). Because petitioner's interest in the flower bonds is considered to have passed from a decedent to petitioner under section 1014(b), respondent concludes that the basis in such bonds is their fair market value at the time of decedent's death under section 1014(a). We agree with respondent.

Under the community property laws of Texas, all property acquired during a marriage is deemed to be community property if not acquired by gift, devise, or descent. *Arnold v. Leonard*, 114 Tex. 535, 273 S.W. 799 (1925), Tex. Const. art. 16, sec. 15; Tex. Fam. Code Ann. sec. 5.01 (Vernon). Upon acquisition, each spouse obtains an undivided one-half vested interest in such property. *Ray v. United States*, 538 F.2d 1228 (5th Cir. 1976); *Hopkins v. Bacon*, 282 U.S. 122 (1930). Such is the case with respect to the acquisition of the flower bonds in the instant case. Petitioner and her husband each owned an undivided one-half vested interest in the bonds prior to her husband's death and, upon his death, petitioner's one-half was distributed to her. The other one-half was properly included in decedent's gross estate because his ownership of such bonds was limited to a one-half interest under Texas community property law.

Petitioner contends that, because the decedent's one-half interest in the flower bonds was valued at $452,452.50 for Federal estate tax purposes, under section 1014(a), the fair market value of her one-half interest in the same bonds should be the same. Her position is contrary to the holding in *Bankers*

*Trust Co. v. United States*, 284 F.2d 537 (2d Cir. 1960), cert. denied 366 U.S. 903 (1961). In that case, the court held that flower bonds which could be used to pay Federal estate taxes had a fair market value at date of death equal to the par value of the bonds. That is because the special use of the bonds establishes a fair market value of par as they are redeemable at par in payment of the Federal estate tax liability. Any flower bonds owned by the decedent which cannot be redeemed to pay death taxes are valued at the prevailing fair market value at the date of decedent's death or the optional evaluation date if that valuation date is elected. The reason for such valuation of the flower bonds which cannot be redeemed for payment of death taxes is obvious; i.e., they can only be sold on the open market; they cannot be redeemed at par. The flower bonds which petitioner received and later sold fall into the same category as flower bonds owned by a decedent which cannot be redeemed because the decedent owned more flower bonds (valued at par value) than the Federal estate tax liability. The flower bonds which petitioner received could not be used by her husband's estate to pay any Federal estate tax liability because they did not belong to the estate; they belonged to petitioner by reason of her community property interest in them.

Accordingly, petitioner's basis for computing gain or loss upon her sale of the flower bonds was the fair market value of the bonds on the date of death of her husband, not the par value of those bonds on that date.

Petitioner argues that Rev. Rul. 76–68, 1976–1 C.B. 216, was issued in response to technical advice requested in connection with her case while it was pending with the Internal Revenue Service and, therefore, that the revenue ruling should not represent authority for respondent's position here.

A revenue ruling does not constitute authority for deciding a case in this Court. We would decide this issue irrespective of the existence or nonexistence of a revenue ruling. We agree with the Court of Appeals for the Second Circuit in *Bankers Trust Co. v. Commissioner, supra,* and we agree with the conclusion reached in Rev. Rul. 76–68, not because we rely upon it for authority, but because we conclude it is correct. Cf. *Ludwig v. Commissioner,* 68 T.C. 979 (1977).

*Decision will be entered for the respondent.*