ALAN R. RACKSTRAW and MARCIA Y. RACKSTRAW, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rackstraw v. Commissioner
Docket No. 176-88
United States Tax Court
T.C. Memo 1989-115; 1989 Tax Ct. Memo LEXIS 115; 56 T.C.M. (CCH) 1506; T.C.M. (RIA) 89115; March 23, 1989; As amended March 23, 1989 Alan R. Rackstraw, pro se. Thomas F. Eagan, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: *116 Respondent determined deficiencies of $ 361 and $ 3,104 in petitioners' Federal income taxes for 1982 and 1983, respectively. After concessions, the sole issue remaining for decision is whether an addition to petitioners' residence qualifies as renewable energy source property within the meaning of section 44C. [1]
FINDINGS OF FACT Some of the facts have been stipulated, and the facts set forth in the stipulation are incorporated in our findings by this reference. Petitioners Alan R. and Marcia Y. Rackstraw (petitioners) were residents of Placitas, New Mexico, at the time they filed their petition. Petitioners purchased their residence in May 1981. At that time, the residence contained nine rooms with approximately 2,100 square feet of floor space heated by a gas, forced-air furnace. The home also had two outside, covered, open porches. During 1982, petitioners employed Magnum Homes, Inc. (Magnum), a licensed general contractor, to build an attached, passive solar structure on the south side of their residence. The solar structure *117 has all of the five essential components of a passive solar system as described in section 1.44C-2(f)(3), Income Tax Regs.: (1) a solar collection area, glass; (2) an absorber, tile floor; (3) a storage mass, water drums and stucco wall; (4) a heat distribution method, thermostats and fans; and (5) heat regulation devices, thermostats and fans. The solar structure was constructed on a six-inch cement slab and has exterior dimensions of approximately 24 feet in length and 12 feet in width. The ceiling of the solar structure slopes from 11 feet to 7 1/2 feet in height, at which point it becomes the south-facing glass wall and drops at a 65 degree angle to a height of 3 feet. Of the approximately 275 square feet of floor space in the solar structure, approximately 168 square feet are open and accessible, with at least minimal headroom. A person six feet, three inches tall could stand within three feet of the bottom of the south-facing glass wall. The solar structure was built according to the design and construction of petitioners' residence and conforms to the covenants pertaining to the subdivision in which it is located. The solar structure is wired for electricity *118 in accordance with the applicable building code and is connected to petitioners' master bedroom by a glazed door that replaced a previously existing window. The solar structure also has two windows and two glazed doors on the east and west sides of the residence which lead to petitioners' yard. A fan on the north wall of the solar structure blows heated air into petitioners' master bedroom during the winter, while a fan on the west wall blows heated air out of the structure during warm weather. The solar structure was designed for maximum heat production. During the winter months, the air in the solar structure circulates, with cool air coming in from petitioners' master bedroom through a cold air return and warm air being blown back into the bedroom by ceiling fans. During the summer months, most of the interior of the solar structure is shielded from direct sunlight by an insulated roof, and the ceiling fans are used to exhaust hot air to the outside. The temperature of the air in the solar structure ranges from a low of approximately 50 degrees to a high of approximately 100 degrees. With the thermostats set for the maximum production of heat, the solar structure could provide *119 comfortable living space from 8:00 a.m. to 10:00 a.m. and from 5:00 p.m. to 7:00 p.m. Petitioners have not used the solar structure as additional living space, but they have stored plants in the structure during severely cold winters. Magnum constructed the framed, stuccoed, insulated, glazed, and enclosed solar structure attached to petitioners' residence, and installed a cold air return between the solar structure and the residence at a total cost of $ 7,766.61. Petitioners added the following components to the solar structure at additional expense: (a) porous floor tile
$   734.14
(b) waterproofed paneling
197.25
(c) plumbing and garden-type faucet
77.39
(d) electric wiring
76.01
(e) electric outlets and light fixture
259.88
(f) 50 gallon water drums
52.50
(g) electric fans and thermostats
140.12
(h) hardware and paint
216.10
total additional cost
$ 1,753.39
The water drums, the tile floor, the paneling, and the stucco wall inside the attached solar structure act as the heat storage mass that reduces temperature swings and prevents the temperature in the structure from dropping below 50 degrees at night. Petitioners spent a total *120 of $ 9,520 to construct and finish the solar structure. On their individual income tax returns for 1982 and 1983, petitioners claimed residential energy credits of $ 249 and $ 3,168, respectively. Respondent disallowed the credits for both years on the ground that the solar structure does not constitute qualifying renewable energy source property. OPINION As in effect in 1982 and 1983, section 44C [2] allowed a credit of 40 percent against income tax of qualified renewable energy source expenditures made during a taxable year with respect to a dwelling unit, not exceeding $ 10,000. Section 44C(c)(2)(A) defines "renewable energy source expenditure" as an expenditure made on or after April 20, 1977, for renewable energy source property installed in connection with a dwelling unit located in the United States and used by the taxpayer as his or her principal residence. Section 44C(c)(5)(A) *121 defines "renewable energy source property" as property installed in connection with a dwelling that transmits or uses solar energy for the purpose of heating or cooling such dwelling. Section 44C(c)(2)(C) provides, however, that the term "renewable energy source expenditure" does not include any expenditure properly allocable to any energy storage medium that has a primary function other than the function of energy storage. Section 1.44C-2(f)(4), Income Tax Regs., further defines "solar energy property" and provides: To the extent that a passive or active solar system utilizes portions of the structure of a residence, only the materials and components whose sole purpose is to transmit or use solar radiation (and labor costs associated with installing such materials and components) are included within the term "solar energy property". Accordingly, materials and components that serve a dual purpose, e.g., they have a significant structural function or are structural components of the dwelling (and labor costs associated with installing such materials and components) are not included within the term "solar energy property". * * * Tax credits, like deductions, are a matter of legislative *122 grace, and petitioners bear the burden of proving their entitlement to the claimed credits. Hokanson v. Commissioner,730 F.2d 1245, 1250 (9th Cir. 1984), affg. a Memorandum Opinion of this Court; Rule 142(a), Tax Court Rules of Practice and Procedure.
Petitioners argue that the regulation's definition of "dual purpose" solar energy property does not comply with the intent of Congress in enacting the residential energy tax credit. The regulation in question, however, was promulgated by the Secretary pursuant to an express statutory grant of authority. As such, the regulation in issue is a legislative regulation, rather than merely an interpretative regulation under section 7805. Legislative regulations must be sustained unless unreasonable and plainly inconsistent with the statute they are intended to implement. Commissioner v. South Texas Lumber Co.,333 U.S. 496, 501 (1948). That the regulation in issue here is reasonable and consistent with congressional purpose in enacting section 44C can be seen from the House Report, which states: Solar and wind energy property also does not include expenditures for a swimming pool used as an energy *123 storage medium or any other energy storage medium which serves a dual purpose. [H. Rept. 95-496 (1977), 1978-3 C.B. (Vol. 2) 71, 106.] Similarly, the Senate Report also confirms that this regulation is consistent with the intent of Congress, as follows: The credit for solar energy property applies to "passive solar systems" as well as "active solar systems," or any combination of both these systems. * * * However, expenditures for materials and components which will serve a significant structural function in the dwelling (e.g., extra-thick walls) would not be eligible for the credit. [S. Rept. 95-529 (1977), 1978-3 C.B. (Vol. 2) 199, 231.] The legislative history behind section 44C indicates that Congress intended that energy storage media with dual purposes as well as materials and components with significant structural functions would not be eligible for the residential energy credit. The regulation's restriction of solar energy property to materials and components whose sole purpose is to transmit or use solar radiation is clearly reasonable and consistent with the legislative intent in providing for this credit. Petitioners contend that section *124 1.44C-2(f), Income Tax Regs., in effect at the time the solar structure was built defined "dual function" as components that have a significant structural function, but did not use the words "dual purpose." Petitioners are incorrect. Section 1.44C-2(f)(4), Income Tax Regs., in effect in 1981, equated the term "dual function" with the term "dual purpose" and applied both terms to materials and components with significant structural functions. Both respondent and petitioners call our attention to three revenue rulings that attempt to define dual purpose. Revenue rulings are not authority binding on this Court. Estate of Lang v. Commissioner,64 T.C. 404, 406-407 (1975), affd. on this issue 613 F.2d 770, 776 (9th Cir. 1980). We may, however, adopt the reasoning in them. Neuhoff v. Commissioner,75 T.C. 36, 46 (1980), affd. 669 F.2d 291 (5th Cir. 1982). Two of the rulings cited, Rev. Rul. 83-162, 1983-2 C.B. 11, and Rev. Rul. 85-40, 1985-1 C.B. 1, are inapposite, as they involve property that was not capable of alternative uses. In Rev. Rul. 84-34, 1984-1 C.B. 9, respondent took *125 the position that an addition to a taxpayer's residence similar to the addition built by petitioners was a dual function device, being both part of the passive solar system and a structural component of the dwelling, because it added useable, habitable space to the house. Respondent, however, ruled that other parts of the passive solar heating system whose sole purpose was to transmit or use solar radiation did qualify for the residential energy credit. We agree with respondent's position in Rev. Rul. 84-34, supra, and we consider the facts of the instant case to be similar in all material respects. Petitioners' solar structure, as a practical matter, was an additional room attached to their residence. For purposes of eligibility for the tax credit, the function of the solar structure is determined on the basis of the capacity of the room for other uses and not on the basis of petitioners' actual use or subjective intent. Tamura v. United States,734 F.2d 470 (9th Cir. 1984). Petitioners' solar structure served a dual function, both as a passive solar structure and as a structural component of their residence, within the meaning of section 1.44C-2(f)(4), *126 Income Tax Regs. Accordingly, the structure does not meet the definition of solar energy property and is not eligible for the residential energy credit. In Rev. Rul. 84-34, supra, respondent took the position that materials and components that were structural components of the dwelling, such as windows, skylights, greenhouses, a concrete foundation, flooring, and sliding patio doors, did not qualify as solar energy property. Respondent, however, ruled that materials and components such as water barrels, insulation, louvers and grates, thermostatic controls, and duct work did not have a dual function and thus were eligible for the residential energy credit. In the instant case, respondent conceded that the water drums, the tile floor, the paneling, and the stucco wall acted as the heat storage mass, one of the five essential elements of a passive solar system. The water drums and the thermostatically controlled fans do not have a dual function and, therefore, are eligible for the residential energy credit. The water drums, the thermostats, and the fans would not be useable without the plumbing and the electric wiring and outlets. The plumbing and electric wiring *127 and outlets were specifically designed to support the water drums and the thermostatically controlled fans and, therefore, cannot be said to be dual function components. Petitioners have substantiated costs of $ 822.00 for materials and components whose sole function is to transmit or use solar radiation. These expenditures are, therefore, eligible for the credit. To reflect the foregoing and other issues settled by the parties, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect during the years in issue, except as otherwise noted.↩
2. Section 44C was redesignated as section 23 by section 471(c) of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 826. This change is effective for taxable years beginning after December 31, 1983. Sec. 475(a), Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 847.↩