C&M AMUSEMENTS, INC., JOSEPH CAPOGROSSO, TAX MATTERS PERSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
C&M Amusements v. Commissioner
Docket No. 4765-91
United States Tax Court
T.C. Memo 1993-527; 1993 Tax Ct. Memo LEXIS 535; 66 T.C.M. (CCH) 1310; November 16, 1993, Filed *535 Decision will be entered under Rule 155. For petitioner: Jared J. Scharf. For respondent: Alan S. Kline. WELLS
WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION WELLS, Judge: On December 13, 1990, respondent sent a notice of final S corporation administrative adjustment (FSAA) for taxable years 1983, 1984, and 1985 to Joseph Capogrosso, as tax matters person (TMP) of C&M Amusements, Inc. (C&M Amusements). C&M Amusements was a subchapter S corporation subject to subchapter S level corporation audit and litigation procedures of sections 6221-6223 for 1983, 1984, and 1985. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, the issues remaining to be decided are: (1) Whether the four consents signed by respondent and Joseph Capogrosso (petitioner) to extend the period of limitations to assess C&M Amusements' S corporation items are valid; [1] (2) whether C&M Amusements failed to report income during taxable year 1984 in the amount of $ 10,703; and (3) whether C&M Amusements is entitled to depreciate its video games as 3-year *536 property for taxable years 1983, 1984, and 1985. FINDINGS OF FACT Some of the facts have been stipulated for trial pursuant to Rule 91. The stipulation and accompanying exhibits are incorporated in this Memorandum Opinion by reference. C&M Amusements was incorporated under the laws of New York in 1983. At the time the petition in the instant case was filed, C&M Amusements' principal place of business was located at 2821 Middletown Road, Bronx, New York. C&M Amusements elected *537 subchapter S status under section 1361. C&M Amusements has two 50 percent shareholders, petitioner Joseph Capogrosso and Dominick Falciglia, and was engaged in the placement of video game machines it owned in stores, amusement parks, and other business establishments. Mr. Falciglia was primarily responsible for the installation and repair of the machines as well as the collection of proceeds from the video games on location. Although petitioner occasionally helped collect the proceeds, he was more involved with the financial aspects of C&M Amusements than its day-to-day operations. Petitioner and Mr. Falciglia also personally purchased video game machines and sold them at wholesale prices. Mrs. Lois Wege prepared C&M Amusements' Federal income tax returns (Forms 1120-S) for taxable years 1983, 1984, and 1985, which were timely filed. On all three returns, C&M Amusements treated its video game machines as 3-year property for purposes of depreciation. The returns claimed depreciation deductions for the video games in the amounts of $ 14,742 for taxable year 1983, $ 9,645 for taxable year 1984, and $ 1,960 for taxable year 1985. During 1985, Internal Revenue Service (IRS) Revenue *538 Agent Osmond Brown began an audit of C&M Amusements' 1983, 1984, and 1985 taxable years. [2] On May 6, 1986, on behalf of C&M Amusements, petitioner signed a Form 2848, granting Mrs. Wege a power of attorney over C&M Amusements' tax affairs. During the course of the audit, Agent Brown dealt extensively with Mrs. Wege. He requested all items pertaining to C&M Amusements and any related parties. He reviewed her files on C&M Amusements, including all tax returns and bank accounts. Agent Brown photocopied the materials he needed and left the originals with Mrs. Wege. Sometime prior to July 28, 1986, on behalf of C&M Amusements, petitioner signed a Form 872-S, Consent to Extend the *539 Time to Assess Tax Attributable to Items of an S Corporation, for taxable year 1983 which extended respondent's time to assess S corporation items until December 31, 1988 (first consent). [3] Petitioner had received the first consent from Mrs. Wege, who had instructed petitioner to sign it and return it to her. Mrs. Wege apparently forwarded the first consent to the IRS. *540 During 1987, Agent Brown prepared another Form 872-S (second consent), but sent it directly to petitioner at his home address at 84 Harrowgate Drive, Cherry Hill, New Jersey, 08003. The second consent extended the time to assess taxable year 1984 until December 31, 1988. On October 9, 1987, without consulting Mrs. Wege or another tax adviser, petitioner signed the second consent and mailed it back to the IRS. Petitioner received a third Form 872-S (third consent) extending taxable years 1983, 1984, and 1985 until December 31, 1989, which he signed on September 21, 1988, and a fourth Form 872-S (fourth consent) extending such taxable years until December 31, 1990, which he signed on June 27, 1989. The third and fourth consents were prepared by a revenue agent other than Agent Brown and were sent directly to petitioner's home. Petitioner did not consult with any professionals prior to signing them. By the time the fourth consent was signed by petitioner, a new power of attorney was in effect which designated Jared Scharf as C&M Amusements' representative. The power of attorney was signed on behalf of C&M Amusements by Mr. Falciglia, who was being investigated for criminal tax *541 fraud. From the materials Mrs. Wege had provided, Agent Brown discovered that, during 1984, money had been deposited into two different checking accounts at European American Bank. The first checking account was in the name of C&M Amusements (C&M Amusements Account). For the months of January through April 1984, the address used for the purpose of sending monthly statements of the C&M Amusements Account was 2 Rosewood Ct., Somerset, New Jersey, 08873. For the months of May through December 1984, the address to which the monthly statements of the C&M Amusements Account were sent was 2821 Middletown Road, Bronx, New York, 10461, which is the same address as C&M Amusements' principal place of business. During 1984, the following total deposits for each month were made to the C&M Amusements Account: Total Amount of Deposits
Month for Month January
$  4,055.38
February
5,664.97
March
7,302.19
April
8,870.71
May
7,894.54
June
4,247.65
July
4,107.00
August
7,331.24
September
7,401.74
October
5,699.57
November
6,049.24
December
7,095.74
Total for year
75,719.97
The second checking account was opened in May 1984 in the name of C&M Vending (C&M Vending Account). *542 The address to which monthly statements of the C&M Vending Account were to be sent was the same as the address used for C&M Amusements Account for May through December 1984. During 1984, the following total deposits for each month were made to the C&M Vending Account: Total Amount of Deposits
Month for Month May
$  5,263
June
785
July
5,480
August
500
September
25,580
October
509
November
8,900
December
1,000
Total for year
48,017
During 1984, the total deposits in the two checking accounts were $ 123,737. C&M Amusements' general ledger recorded that an additional $ 9,615.84 in income was not deposited in any account at any financial institution, but was instead used to make numerous cash expenditures. C&M Amusements reported gross receipts of $ 122,650 on its 1984 tax return. The IRS Service Center (Service Center) has no record of a request by an entity known as C&M Vending for an employee identification number. Additionally, the Service Center has no records of tax returns for an entity known as C&M Vending for taxable years 1983 through 1985. Respondent determined that $ 133,352.81, the sum of the C&M Amusements Account ($ 75,719.97), the C&M *543 Vending Account ($ 48,017), and the undeposited receipts ($ 9,615.84) reflected C&M Amusements' gross receipts for taxable year 1984. Respondent determined that C&M Amusements' gross income should be increased by $ 10,703, the amount by which such gross receipts exceeded the amount C&M Amusements reported on its return. In addition to increasing C&M Amusements' gross income on its 1984 tax return, respondent disallowed a portion of the depreciation deductions C&M Amusements claimed in 1983, 1984, and 1985. Respondent determined that the video games were 5-year property under the accelerated cost recovery system (ACRS) of section 168 rather than 3-year property as C&M Amusements had claimed on its returns for such years. OPINION The Consents
Petitioner contends that the four consents are invalid, and therefore, the period of limitations for the assessment of tax for 1983, 1984, and 1985 has expired. Petitioner contends that the first consent is invalid because it was signed by petitioner prior to his designation as TMP of C&M Amusements. Petitioner further claims that the second, third, and fourth consents are invalid because respondent deliberately sent the forms directly *544 to petitioner rather than his attorney in fact duly designated under the power of attorney. Petitioner alleges that respondent communicated directly with petitioner as part of a scheme to circumvent petitioner's counsel and to take advantage of an unsuspecting taxpayer. Section 6229(a), as made applicable by section 6244, generally provides that the period of limitations for assessing income taxes attributable to subchapter S items shall not expire before the date which is 3 years after the later of (1) the date on which the corporation's tax return was filed or (2) the last day for filing such return (determined without extensions). An exception to the general rule is provided by section 6229(b), under which the period of limitations may be extended by mutual written agreement between the tax matters person and the IRS. The expiration of the period of limitations is an affirmative defense, which must be pleaded and proved. Rules 39, 142(a). Once it is established that the statutory notice, or in the instant case, the FSAA, was issued beyond the general 3-year period of limitations, the burden of going forward shifts to the Commissioner to show that an exception to the period *545 of limitations applies. If the Commissioner relies on the existence of a written consent to extend the period of limitations, then upon the introduction into evidence of a consent which is valid on its face, the burden of going forward shifts back to the taxpayer to prove that the exception relied on by the Commissioner is invalid or inapplicable. Adler v. Commissioner, 85 T.C. 535, 540 (1985). A consent is valid on its face if it includes the name of the taxpayer, the signature of the taxpayer or a person authorized to sign on the taxpayer's behalf, and the taxable year as to which the statute is to be extended, and was signed on a date prior to the expiration of the limitations period. Doneff v. Commissioner, T.C. Memo. 1991-253 (citing Lefebvre v. Commissioner, T.C. Memo. 1984-202, affd. 758 F.2d 1340 (9th Cir. 1985)). In the instant case, petitioner has shown that the FSAA was issued after the expiration of the 3-year period of limitations, not considering extensions, for taxable years 1983, 1984, and 1985, and respondent has introduced facially valid consents *546 to extend the period of limitations for such taxable years. Consequently, petitioner must prove that the consents are invalid. Turning to the first consent, petitioner argues that he had no authority to sign the extension because he had not been formally designated as TMP of C&M Amusements. [4] Section 6231(a)(7)(B), which is made applicable to S corporations by section 6244, provides that, if no shareholder has been designated as TMP, the shareholder having the largest interest in the corporation at the close of the taxable year or, if there is more than one such shareholder, then the one of such shareholders whose name would appear first in an alphabetical listing of the shareholders is the TMP. Because "Capogrosso" precedes "Falciglia" alphabetically, even without any written authorization, petitioner is the TMP. Gold-N-Travel, Inc. v. Commissioner, 93 T.C. 618 (1989). Accordingly, we hold that the first consent was duly authorized by petitioner as the TMP of C&M Amusements.
*547 Petitioner contends that the other three consents are invalid because they were sent directly to petitioner rather than to C&M Amusements' representative, Mrs. Wege. Petitioner contends that respondent took advantage of petitioner as an "unsuspecting taxpayer" by sending the consents directly to petitioner instead of the representative. Petitioner contends that respondent was required to send the forms to the representative and that the consents are defective because they were sent directly to petitioner instead of the representative. We disagree. The issue of whether a consent is invalid because it was not sent to the taxpayer's representative was squarely before us in Neuhoff v. Commissioner, 75 T.C. 36 (1980), affd. 669 F.2d 291 (5th Cir. 1982). See also J.H. Rutter Rex Manufacturing Co. v. Commissioner, 853 F.2d 1275, 1282 (5th Cir. 1988), affg. in part and revg. in part T.C. Memo. 1987-296; Mecom v. Commissioner, 101 T.C.     (1993). In Neuhoff v. Commissioner, we held that, although the taxpayer had designated a representative to act on her behalf, *548 nothing precluded the taxpayer from acting on her own behalf. Id. at 42. In upholding the consents in question, we stated: That is not to say we condone the Internal Revenue Service's obtaining consents from a taxpayer who is represented by an attorney-in-fact. We can see opportunities for abuse if an unsuspecting taxpayer executed a document tendered by the Internal Revenue Service which might be detrimental to the taxpayer's rights or interest because the taxpayer's representative was not consulted. That does not happen to be the situation here. * * * [Id. at 43.]
Petitioner argues that he did not knowingly and advisedly consent to extend the period of limitations and that he only signed the consents because he thought they were the same as the first consent which Mrs. Wege had instructed him to execute. Petitioner maintains that respondent took advantage of him and that he is the "unsuspecting taxpayer" which we alluded to in Neuhoff v. Commissioner, supra. Petitioner points to his testimony about his lack of knowledge of the significance of the first consent form and the fact that he did not ask Mrs. Wege what its significance *549 was. Petitioner contends that he merely signed the first consent because his trusted return preparer, Mrs. Wege, told him to sign it. Notwithstanding such testimony, we do not agree with petitioner that the consents are invalid. Based upon the facts of the instant case, we find that respondent has not prejudiced the rights of petitioner or of C&M Amusements to the extent that the consents should be held invalid. Petitioner has not presented any evidence that his signature was procured by duress, undue influence, deception, or fraud. Indeed, petitioner testified that he was not coerced into signing any of the consents. Moreover, Agent Brown testified that he sent the second consent directly to petitioner because Mrs. Wege had the only power of attorney on file and Agent Brown believed that Mrs. Wege had retired, making petitioner the logical person to contact for signing the consents. Petitioner's argument that he did not advisedly sign the consents is without merit. Petitioner sought Mrs. Wege's help to make decisions about tax matters, yet when he received the consents from Agent Brown, he chose not to consult her about them. Petitioner simply could have consulted with Mrs. *550 Wege or another tax professional about signing the consents. Instead, he opted to sign the forms without such advice. As we see it, petitioner merely chose to rely on his own judgment instead of that of his tax adviser. In short, we find Agent Brown's failure to send the consents to C&M Amusements' representative to be "harmless". Neuhoff v. Commissioner, supra at 42. Moreover, petitioner's assertion that he thought he was signing an identical copy of the form he had previously signed is not grounds for invalidating the consents. "It is the objective manifestation of mutual assent as evidenced by the parties' overt acts, not the parties' secret intentions that determines whether the parties have made an agreement." Kronish v. Commissioner, 90 T.C. 684, 693 (1988) (citing 1 Williston, Contracts, secs. 22, 35 (3d ed. 1957); 1 Restatement, Contracts 2d, sec. 19 (1979)); Pimpinello v. Swift & Co., 253 N.Y. 159, 162-163, 170 N.E. 530, 531 (1930). By intentionally and voluntarily signing the second, third, and fourth consent forms, petitioner manifested the requisite assent *551 to the contents of the form. Respondent was justified in relying on the consents signed by petitioner, making it unnecessary to proceed with an assessment as if petitioner had refused to consent to an extension. Neuhoff v. Commissioner, supra at 42. Accordingly, we hold that the second, third, and fourth consents are valid and that the FSAA was timely issued. Unreported Income
Based on a comparison of C&M Amusements' business ledger and bank accounts with its 1984 tax return, respondent determined that C&M Amusements failed to report $ 10,070 in taxable income for taxable year 1984. The parties stipulated that C&M Amusements' general ledger reflected that $ 9,615.84 was received by petitioner and was not deposited in any bank account, but was used to pay cash expenditures. Consequently, the only issue is whether the deposits to the C&M Vending Account are attributable to C&M Amusements. Petitioner contends C&M Vending is a different taxable entity from C&M Amusements and that the portion of the money that was deposited to the C&M Vending Account constitutes income of C&M Vending. Generally, the taxpayer bears the burden of proof. *552 Rule 142(a). The FSAA is presumed correct. Cf. Clovis I v. Commissioner, 88 T.C. 980 (1987) (FPAA is the functional equivalent of notice of deficiency); Mammoth Lakes Project v. Commissioner, T.C. Memo. 1991-4 (the taxpayer bears the burden of proof in case filed under TEFRA partnership provisions of sections 6241-6245). Relying on Helvering v. Taylor, 293 U.S. 507 (1935), however, petitioner contends that the adjustment made on account of alleged unreported income is arbitrary and excessive and, therefore, the burden of proof should be shifted to respondent. [5]
Petitioner first contends *553 that respondent's adjustment is arbitrary because respondent destroyed the records that petitioner would need in order to prove that the deposits to C&M Vending belong to another entity. The record contains a letter that was sent to Special Agent Erroll Millman, the agent conducting the criminal investigation of Mr. Falciglia, which itemizes the documents and other items that were given to respondent. The letter, however, is vague and general. According to the letter, Mr. Falciglia turned over the following items pertaining to taxable year 1984: One box of bank records, receipts, and other items pertaining to 1984, arranged in folders by month. Bank records include deposit slips, bank statements, cancelled checks, and check stubs. * * * General ledger, general journal, cash receipts journal, cash disbursements journal, payroll register, profit and loss statements, balance sheets, assorted accountant's workpapers, and trial balances for 1984 and 1985.
Respondent does not seriously dispute that such records are lost and may have been destroyed. The letter, however, does not clearly indicate that any tax returns or other records of an entity known as C&M Vending were received *554 by respondent. Moreover, petitioner did not retain copies of the records he turned over to respondent. Accordingly, we are not convinced that respondent has destroyed any evidence that would show C&M Vending is a separate taxable entity from C&M Amusements. Petitioner's next contention is that respondent must have seen something in the first examination of petitioner which caused respondent to conclude that deposits to the C&M Vending Account were not income to either an entity known as C&M Vending or to C&M Amusements. Petitioner bases his contention upon the assertion that respondent did not determine that such deposits were income to either C&M Amusements or any other entity. The record is unclear as to whether there were two discrete examinations of C&M Amusements. In any event, the mere fact that respondent did not initially determine that the deposits were income to C&M Amusements does not render the FSAA arbitrary. Petitioner suggests that there are many possibilities as to how the deposits to the C&M Vending Account were reported for tax purposes and that respondent has failed to address such possibilities. For example, petitioner contends that the unreported income *555 could have been reported on the tax returns of C&M Vending's shareholders, or alternatively, that the deposits could have been offset completely by the cost of goods sold by C&M Vending. Such assertions are without merit, however, because it is petitioner, not respondent, who has the burden of proving that the deposits to the C&M Vending Account are not income to C&M Amusements. Consequently, respondent had no duty to address such potential explanations for the unreported income. Respondent's failure to address these potential explanations does not make the FSAA arbitrary. Moreover, petitioner failed to produce any documents or other evidence corroborating the separate existence of C&M Vending. The record shows that the Service Center has no record of a request by an entity known as C&M Vending for an employee identification number and no tax returns from C&M Vending on file for the taxable year in issue or either of the taxable years before or after the year in issue when C&M Vending was allegedly in business as a separate taxable entity. Furthermore, petitioner could have called Mrs. Wege as a witness to corroborate C&M Vending's separate existence, but petitioner did not *556 call her. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd 162 F.2d 513 (10th Cir. 1947) ("The rule is well settled that failure of a party to introduce evidence within his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced, it would be unfavorable."). According to Mr. Falciglia's testimony, it appears that C&M Amusements and C&M Vending were treated as one and the same. The two vending activities were run out of the same office and managed by the same two people, i.e., petitioner and Mr. Falciglia. The first activity was the portion of the business which installed and serviced video games at local amusement establishments. The second activity was a wholesale business in which petitioner and Mr. Falciglia purchased video games and sold them at wholesale prices. Based on the record in the instant case, we hold that petitioner has failed to prove that the deposits to the C&M Vending Account were not income to C&M Amusements. Accordingly, we sustain respondent's adjustment in the FSAA with respect to the unreported income in the amount *557 of $ 10,070. Depreciation Deductions
On Forms 4562 of its 1983, 1984, and 1985 returns, C&M Amusements claimed it was entitled to depreciate its video games over a 3-year period and claimed depreciation deductions in the amount of $ 14,742 in 1983, $ 9,645 in 1984, and $ 1,960 in 1985. Respondent contends that the video games must be depreciated over a 5-year recovery period under Rev. Proc. 83-35, 1983-1 C.B. 745, which establishes asset guideline periods for the ACRS of section 168. Petitioner has the burden of proving the video games should be depreciated over a 3-year recovery period. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); Mammoth Lakes Project v. Commissioner, T.C. Memo. 1991-4. Petitioner contends that the recovery period should be 3 years, the shortest period available on Form 4562, because the video games became obsolete within 2 to 18 months of being placed in service. Section 167(a) permits a taxpayer to claim as a depreciation deduction "a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)" *558 of property used in a trade or business. Sec. 167(a)(1). Additionally, in the case of "recovery property" as defined under section 168, the allowable deduction under section 168 is deemed to constitute the reasonable allowance as permitted under section 167. Sec. 167(a). Section 168 governs the depreciation of recovery property placed in service after December 31, 1980. The provisions of section 168 are mandatory unless an election is made to utilize a different recovery percentage under section 168(b)(3). Henderson v. Commissioner, T.C. Memo. 1993-171; Barron v. Commissioner, T.C. Memo. 1992-598. Any election made under section 168 must be made for the taxable year in which the property is placed in service and any such election must be made on the taxpayer's tax return for the taxable year concerned. Sec. 168(f)(4). Pursuant to section 168(c), C&M Amusements' video games are "recovery property" because such games were tangible depreciable property used in a trade or business. Consequently, use of ACRS was mandatory for C&M Amusements unless it made an election under section 168(b)(3). There is nothing in the *559 record to indicate that an appropriate election was made to depreciate the video games under an alternate method. [6] Moreover, video game equipment does not meet the definition of 3-year property. Sec. 168(c)(2), 79; Rev. Proc. 83-35, 1983-1 C.B. 745. Consequently, C&M Amusements must calculate its depreciation deductions under section 168 as determined by respondent. All other arguments of petitioner have been considered and found to be without merit. Based on the foregoing, Decision will be entered under Rule 155. Footnotes
1. After pleading the period of limitations as an affirmative defense in the petition, petitioner raised the issue of the validity of the four consents in the form of a motion for summary judgment filed before trial. Because the motion had been filed less than 2 months before call of the calendar on which the case was calendared for trial, the parties agreed that the motion should be heard at trial. As the issue of the validity of the consents was tried and is decided in this Memorandum Opinion, the motion for summary judgment is moot.↩
2. Simultaneously, Agent Brown began to examine Mr. Falciglia's individual Federal income tax returns for taxable years 1983, 1984, and 1985. Agent Brown referred Mr. Falciglia's file to respondent's Criminal Investigation Division (C.I.D.) to undergo an investigation for fraud. Mr. Falciglia was never indicted as a result of this matter.↩
3. The first consent was prepared by Agent Brown, who addressed the form to "C&M Amusements Inc., care of Abraham Rosten, 1929 Commerce Street, P.O. Box 65, Yorktown Heights, New York 10598." Mr. Rosten was the attorney who incorporated C&M Amusements. The record is unclear as to Mr. Rosten's subsequent role in the affairs of C&M Amusements. Respondent states that at the time the second consent was mailed to C&M Amusements, the power of attorney for Abraham Rosten was still in effect. We, however, note that Form 2848, Power of Attorney and Declaration of Representative, revokes all earlier power of attorney declarations for the same taxable year(s) unless the taxpayer states otherwise on the form. Consequently, as petitioner did not specify otherwise, the power of attorney granted to Mrs. Wege revokes any prior powers of attorney for the same years.↩
4. The record indicates that the only TMP designation on file with the IRS for C&M Amusements was for petitioner for the 1984 taxable year. The designation form was signed on Nov. 20, 1987.↩
5. We note that even if a taxpayer succeeds in proving that the notice is arbitrary, the burden of proof does not shift to the Commissioner. Under the rule of Helvering v. Taylor, 293 U.S. 507↩ (1935), the presumption that the notice is correct disappears, but the taxpayer still bears the burden of proof.
6. Even if C&M Amusements had made an election on its returns, the obsolescence deductions as claimed for 1983, 1984, and 1985 are impermissible under the express language of sec. 167, which states that, for recovery property, a depreciation deduction must be taken under sec. 168 as it is the reasonable allowance for purposes of sec. 167↩.