MAMMOTH LAKES PROJECT, ROBERT AND MARTHA FESSLER, TAX MATTERS PARTNERS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mammoth Lakes Project v. Commissioner
Docket No. 3480-88
United States Tax Court
T.C. Memo 1991-4; 1991 Tax Ct. Memo LEXIS 4; 61 T.C.M. (CCH) 1630; T.C.M. (RIA) 91004; January 10, 1991, Filed *4 Decision will be entered for the respondent. Daniel J. Van Dyke, for the petitioner. Christine V. Olsen, for the respondent. COHEN, Judge. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined the following adjustments to petitioner's partnership income for 1984 and 1985: Adjustment
1984
1985
Intangible Drilling
Costs
$ 243,040
$ 25,000
Net Earnings from
Self-Employment
285,000
0   The issues for decision are (1) the extent to which petitioner may deduct currently, as intangible drilling and development costs, amounts paid to another partnership during the taxable years ended December 31, 1984, and December 31, 1985, and (2) whether petitioner may treat a $ 285,000 loss claimed on its 1984 partnership return of income, Form 1065, as a net loss from self-employment. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated, and the facts set forth in the stipulations are incorporated in our findings by this reference. *5 Robert and Martha Fessler are the tax matters partners of the Mammoth Lakes Project, a general partnership with its principal place of business in Woodburn, Oregon. For convenience, the Mammoth Lakes Project is referred to in this opinion as "petitioner." See, however, Rule 240(c)(1). Petitioner was formed in October 1984. In 1984 and 1985, partners made capital contributions to petitioner that totaled $ 285,000 and $ 25,000, respectively. All partner contributions were deposited in a checking account at the Woodburn State Bank. On December 19, 1984, petitioner entered into a joint venture agreement (the agreement) with Wood & Associates (Wood), a California general partnership. The agreement stated that: In consideration of the payment by * * * [petitioner] of $ 305,000 toward necessary and ordinary expenses incurred, and that will be incurred, in development of the Mammoth Lakes geothermal site, * * * [Wood] hereby agrees that * * * [petitioner] shall, by reason of this agreement, own 10% (ten percent) of the interest owned by * * * [Wood]. * * *
Wood's interest in the Mammoth Lakes Project (the project) consisted of lease rights from Magma Power, permit *6 rights from Mono County, a contract for purchase of electrical power with the Southern California Edison Company, and physical improvements and developments to the project. Petitioner was also entitled to 10 percent of the net profits that Wood received from all electrical production generated from the project. Petitioner's liability for debts incurred by Wood was limited to $ 305,000. The agreement did not provide for the allocation of losses. In a letter to the managing general partner of petitioner, dated October 24, 1988, the general partner of Wood stated that: In reviewing the documentation regarding the Mammoth Project Group, it is true that we did not specifically address the allocation of losses. It is my understanding, that with respect to the amount of money invested by your group, one hundred percent (100%) of the losses were to be allocated to your group. I hope this clarifies the original intent.
This letter was prepared for transmittal to respondent's appeals officer who was dealing with petitioner. Wood retained an option to purchase petitioner's interest in the project. On February 15, 1985, Wood exercised the option and converted petitioner's *7 working interest to an overriding royalty interest. Petitioner received an undivided 2 percent of all of the gross revenue derived from the geothermal energy produced at the project. During 1984 and 1985, Wood incurred intangible drilling and development costs (IDC's) of $ 369,595.22 and $ 173,410.36, respectively, in the development of the project. Of these amounts, $ 28,038.21 was incurred between December 19, 1984, and December 31, 1984, and $ 7,291.95 was incurred between January 1, 1985, and February 15, 1985. During 1984, petitioner paid $ 5,000 to its managing general partner for accounting services. The remainder of the 1984 capital contributions, $ 280,000, was paid to Project Resources Corporation (PRC), an agent of Wood. During 1985, petitioner paid $ 25,000 to PRC. The $ 305,000 paid to PRC during this 2-year period was forwarded to Wood. The $ 305,000 represented the total consideration that petitioner was obligated to pay Wood under the joint venture agreement. Some of the payments described above were designed to reimburse Wood for IDC's that it incurred prior to the date of the agreement. The remainder of the consideration paid to Wood was to be used to complete *8 testing that was required before a county permit could be issued to the project. Without this permit, the project could not get financing necessary to begin operations. Due to pressure from special interest groups, the project was enjoined from drilling by the Superior Court of Mono County, California. The project was abandoned sometime after October 24, 1988. Petitioner elected the cash basis method for tax reporting. On its 1984 partnership return of income (Form 1065), petitioner claimed a $ 280,000 deduction for IDC's and a $ 5,000 deduction for amounts paid for accounting services. As a result, petitioner claimed a $ 285,000 net loss from "self-employment." On its 1985 partnership return of income (Form 1065), petitioner claimed a $ 25,000 deduction for IDC's; petitioner did not claim any portion thereof as a net loss from "self-employment." In his notice of Final Partnership Administrative Adjustment (the FPAA), respondent made several adjustments to petitioner's income. For the taxable year ended December 31, 1984, respondent allowed petitioner to deduct $ 36,960 as IDC's, increasing petitioner's income by $ 243,040; respondent did not allow petitioner to claim the *9 resulting loss as a net loss from self-employment. For the taxable year ended December 31, 1985, respondent disallowed the entire amount that petitioner claimed as IDC's, increasing petitioner's income by $ 25,000. OPINION Intangible Drilling and Development Costs
Section 263(c) authorizes a taxpayer to elect to deduct currently IDC's in the case of oil and gas wells and in the case of wells drilled for any geothermal deposit. Section 1.612-5(a), Income Tax Regs., which implements section 263(c), provides an option to capitalize or to deduct currently intangible drilling expenses incurred in the development of geothermal wells such as those in issue here. This regulation was promulgated to provide the same treatment for IDC's in the case of wells drilled for geothermal deposits as is provided for IDC's in the case of oil and gas wells under section 1.612-4(a), Income Tax Regs.T.D. 7806, 1982-1 C.B. 91. The election to deduct IDC's currently is available only to an "operator." Schiavenza v. United States, 720 F.2d 1117, 1121 (9th Cir. 1983); Haass v. Commissioner, 55 T.C. 43, 50 (1970).This Court has identified certain criteria that must be met before a party *10 qualifies for the option to deduct under section 1.612-4(a), Income Tax Regs. Because the regulations at section 1.612-5(a) are identical in all material respects to the regulations at section 1.612-4(a), the former applying to costs incurred in the drilling and development of oil and gas wells and the latter to costs incurred in the drilling and development of geothermal wells, we will here apply the same criteria. Those criteria are as follows: (1) The taxpayer must hold an operating or working interest in the property being developed; (2) the costs in question must relate to the development of the property in which the taxpayer has a working or operating interest; (3) the nature of the expenditure must fall within the definitional guidelines * * * [of the regulations]; and (4) the payment of incurrence of the costs must occur sufficiently early in the development stages so that the taxpayer is exposed to the unknown risks of development. * * * [Stradlings Building Materials, Inc. v. Commissioner, 76 T.C. 84, 89 (1981).]
The amount that the operator is allowed to deduct currently as IDC's is limited to that part of the costs attributable to its working *11 interest in the project. Section 1.612-5(a), Income Tax Regs., states, in part, that: in any case where any drilling or development project is undertaken for the grant or assignment of a fraction of the operating rights, only that part of the costs thereof which is attributable to such fractional interest is within [the option to deduct]. * * *
In Haass v. Commissioner, supra, we interpreted the identical provision in section 1.612-4(a), Income Tax Regs., to limit amounts currently deductible to costs allocable to the fraction of the interests held by the operator. 55 T.C. at 52.See also Levy v. Commissioner, 732 F.2d 1435, 1438 (9th Cir. 1984), affg. a Memorandum Opinion of this Court. The costs allocable to the fractions of the interests held by others must be capitalized. Haass v. Commissioner, 55 T.C. at 52.
Respondent's Position
Respondent initially determined in the FPAA that Wood incurred IDC's of $ 369,595.22 in 1984. Respondent allowed petitioner to deduct IDC's in the amount of $ 36,960 in 1984, stating that: The expenditures shown in the general ledger from Wood do qualify as intangible drilling costs per Regulations *12 Section 1.612-5; however, * * * [petitioner's] deduction should be limited to its distributive share of the costs per IRC 702. Per the joint venture agreement, * * * [petitioner's] distributive share of the costs would be 10%; therefore, * * * [petitioner] should be allowed a deduction equivalent to 10% of the amount Wood spent in 1984 for intangible drilling costs. * * *
Respondent, therefore, impliedly concluded that the joint venture was an operator within section 263(c) and that petitioner was entitled to deduct as IDC's its distributive share of the costs incurred by Wood during 1984. Respondent disallowed the entire $ 25,000 deduction claimed by petitioner in 1985 for IDC's incurred by Wood in development of the project. Respondent concluded that the conversion by Wood of petitioner's interest in the joint venture to a royalty interest effectively transformed petitioner's interest in the project to an intangible asset, the cost of which must be capitalized. Respondent maintained the same position in his answer to the petition for a readjustment of the partnership items. Specifically, respondent claimed that "partnership adjustments in the amounts of $ 243,040 *13 and $ 25,000 for the years 1984 and 1985, respectively, are in dispute" and denied that petitioner was allocated 100 percent of the losses under the joint venture agreement. At trial and in his post-trial briefs, respondent asserts that petitioner was not an "operator" and is therefore not entitled to deduct currently any amounts as IDC's under section 263(c). Respondent also contends that, even if petitioner were an operator, the amounts currently deductible are limited to costs incurred by Wood during the time that petitioner actually held a working interest in the project and, further, that petitioner can only deduct the amount of the costs attributable to its 10-percent working interest. Petitioner's Position
Petitioner contends that it is entitled to deduct the entire amounts paid to Wood, $ 280,000 in 1984 and $ 25,000 in 1985. Both of the arguments relied upon by petitioner are based on the premise that a partnership existed for Federal income tax purposes between Wood and petitioner; this is consistent with respondent's position in the FPAA and in his answer. In its petition for readjustment of partnership items, petitioner alleged that the amounts paid *14 to Wood were fully deductible because, under the joint venture agreement, 100 percent of the losses was allocated to petitioner. Petitioner, in its post-trial briefs, also argued that, under section 707, Wood was acting in a capacity other than in its capacity as a member of the partnership formed between Wood and petitioner and, accordingly, was entitled to deduct 100 percent of the costs incurred by Wood. Discussion
Petitioner bears the burden of proof. Welch v. Helvering, 290 U.S. 111, 115, 78 L. Ed. 212, 54 S. Ct. 8 (1933);Rule 142(a). Therefore, petitioner has the burden to prove that it is entitled to deductions in excess of the amounts allowed by respondent in the FPAA, $ 36,960 and $ 0 in 1984 and 1985, respectively. The burden of proof is on respondent, however, with respect to a "new matter." Rule 142(a). Respondent has introduced a new matter if it "either alters the original deficiency or requires the presentation of different evidence." Achiro v. Commissioner, 77 T.C. 881, 890 (1981).Respondent, as set out above, argued for the first time at trial and in his post-trial briefs that the deductibility of the IDC's is dependent on petitioner's status, not the joint venture's *15 status, as an operator. Respondent's assertion does not merely clarify his original determination; rather, if we agree with respondent's assertion that petitioner is not an operator, the entire deduction claimed by petitioner in 1984 will be disallowed. It is well settled, however, that new issues may not be raised for the first time on brief. Robertson v. Commissioner, 55 T.C. 862, 865 (1971).We have consistently held that issues that have not been properly pleaded will not be considered by this Court. Estate of Horvath v. Commissioner, 59 T.C. 551, 556 (1973). Stewart v. Commissioner, 714 F.2d 977, 986 (9th Cir. 1983), affg. a Memorandum Opinion of this Court. In the instant case, respondent based his disallowance of a portion of the claimed deduction in 1984 on petitioner's right to its 10-percent distributive share of the IDC's; in 1985, respondent based his disallowance on petitioner's conversion of its interest in the venture to a royalty interest. It is not clear in the pleadings that respondent was contending that petitioner was not an operator and therefore not entitled to any deduction in 1984. The facts required to establish that petitioner is an operator *16 are different from the facts required to establish the theories that petitioner relied on, to wit, that the joint venture between petitioner and Wood was a partnership and that Wood was a partner acting in a capacity other than its capacity as a partner or, alternatively, that petitioner was allocated 100 percent of the losses under the agreement. To permit respondent to rely on this ground under the circumstances is unreasonable. See Estate of Horvath v. Commissioner, 59 T.C. at 557.Accordingly, we decline to consider respondent's argument that petitioner is not an operator and, therefore, not entitled to any deduction in 1984. We now consider the principal issue raised in the pleadings in this case, the amount that petitioner is entitled to deduct as IDC's for the years in issue. Petitioner's first argument is that Wood was acting in a capacity other than in its capacity as a member of the project partnership under section 707. Specifically, petitioner contends that: IRC sec. 707 and * * * [the joint venture agreement] clearly show that Petitioner employed Wood and Associates as its contractor. Wood and Associates developed the project and Petitioner paid *17 the cost to Wood and Associates and at the time of payment the expenditure was for intangible drilling costs. * * *
We agree with petitioner that section 707 permits a partner to act in a capacity other than as a partner and that the transaction will be treated accordingly for Federal income tax purposes. Sec. 1.707-1(a), Income Tax Regs.
Petitioner, however, does not extend this argument. That is, even if we find that Wood was acting in a capacity other than as a partner, petitioner does not indicate what the appropriate Federal income tax treatment should be. In addition, we do not agree that the joint venture agreement clearly shows that petitioner employed Wood as its contractor. The relevant portion of the agreement required petitioner to pay Wood $ 305,000 for necessary and ordinary expenses incurred, and to be incurred, in the development of the geothermal site located at Mammoth Lakes, Mono County, California. In consideration of the payment, petitioner acquired a 10-percent interest in the interest owned by Wood in the project at Mammoth Lakes. This portion of the agreement merely provides the amount that petitioner was required to contribute to the project *18 in exchange for its interest therein; it does not establish that Wood was acting in a capacity other than as a partner. Further, no other evidence was introduced that would allow this Court to determine that Wood was employed as a contractor by the partnership. Therefore, we conclude that Wood was not acting on behalf of the partnership in a capacity other than as a partner. Petitioner's second argument is that, under the joint venture agreement, 100 percent of the losses incurred was allocated to petitioner and that such allocation had substantial economic effect under the regulations at section 1.704-1(b)(2), Income Tax Regs.The substantial economic test applies only if the partnership agreement specifically provides for the allocation of losses. Sec. 704(b)(2). In this case, the agreement provides that petitioner is entitled to 10 percent of the net profits; it is silent with respect to the allocation of losses. Where the agreement does not provide for a partner's distributive share of loss, the distributive share is determined in accordance with that partner's interest in the partnership by taking into account all facts and circumstances. Sec. 704(b)(1); sec. 1.704-1(b)(3), *19 Income Tax Regs.
The only evidence offered pertaining to the allocation of losses is a letter, dated after the petition in this case was filed, from the general partner of Wood to the managing general partner of petitioner, which states that it was the general partner's "understanding" that 100 percent of the losses was allocated to petitioner. This letter is not persuasive because it was not contemporaneous with the agreement or with the relationship between petitioner and Wood; it was provided only in relation to an audit of petitioner's tax liability. A partner's interest in profits is one of the factors to be considered in determining a partner's interest in a partnership under section 1.704-1(b)(3)(ii), Income Tax Regs.; no evidence was presented with respect to the other factors that are to be considered. On the record before this Court, we simply cannot find that petitioner's distributive share was greater than 10 percent, its interest in net profits of the partnership. We therefore conclude that petitioner has failed to carry its burden of proving that it was allocated more than 10 percent of the losses of the partnership under the agreement at issue. Net Loss from *20 Self-Employment
Respondent contends that petitioner improperly characterized any loss that it sustained as a net loss from self-employment and that such characterization offsets other earnings from self-employment, thereby reducing each individual partner's net earnings from self-employment and consequent social security tax burden under section 1401. Section 1402(a)(12), for the years in issue, provided that the distributive share of any item of income or loss of a limited partner is excluded from the computation of net earnings from self-employment. Respondent argues that petitioner was a limited partner in the venture between Wood and petitioner and that any loss that it sustained is therefore excluded from the calculation of net earnings from self-employment under section 1402(a)(12). Specifically, respondent asserts that: While the agreement between Wood and Associates and * * * [petitioner] does not specifically designate * * * [petitioner] as a limited partner, it is clear that * * * [petitioner] has limited liability and does not participate in the management of the venture. * * * [Petitioner] is thus a de facto limited partner. * * * [Emphasis omitted.] *21 Petitioner did not address this issue in its petition nor did it present any evidence that would support its position. Further, in its post-trial briefs, petitioner did not address respondent's superficially correct argument. Petitioner, therefore, is deemed to have conceded this issue. Theodore v. Commissioner, 38 T.C. 1011, 1041 (1962); Kasey v. Commissioner, 33 T.C. 656, 660 (1960).We have considered and reject petitioner's other arguments. Decision will be entered for the respondent.