T.C. Memo. 2001-37


UNITED STATES TAX COURT


ESTATE OF JAMES R. TOBIAS, DECEASED,
V. PAULINE TOBIAS, EXECUTRIX, AND VERNA P. TOBIAS,
SURVIVING SPOUSE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

DARWIN R. TOBIAS, SR., AND SHIRLEY I. TOBIAS, Petitioners
v. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 19756-97, 19757-97.    Filed February 14, 2001.


    John B. Consevage, for petitioners in docket No.
19756-97.

    John S. Kundrat, for petitioners in docket No.
19757-97.

    Joseph M. Abele and David A. Breen, for respondent.

MEMORANDUM OPINION

WHALEN, <u>Judge</u>:  These consolidated cases are before the Court to decide the motion for summary judgment filed by the Estate of James R. Tobias and Ms. V. Pauline Tobias, the cross-motion for summary judgment filed by Mr. Darwin R. Tobias, Sr., and Ms. Shirley I. Tobias, and the cross-motion for summary judgment filed by respondent.  The principal issues for decision in these cases involve the allocation of income pursuant to section 704 from an animal farm business.  All section references in this opinion are to the Internal Revenue Code as in effect during the years in issue, unless specified otherwise.  Respondent's determinations have the effect of allocating all of the income from the business for the years 1991 and 1993 to Mr. James R. Tobias and allocating 50 percent of the income from the same business for the years 1990, 1991, and 1993 to Mr. Darwin R. Tobias.

Background

The two cases consolidated herein involve petitions filed by or on behalf of two brothers and their wives.  The first brother, Mr. James R. Tobias, died on September 8, 1996.  In this opinion, he is sometimes referred to as the decedent or James.  His wife, Ms. V. Pauline Tobias, was appointed executrix of his estate.  She resided in Halifax,

Pennsylvania, at the time the instant petition was filed on her behalf. The decedent and his wife filed joint Federal income tax returns for each of the years in issue in their case, 1991 and 1993. In the notice of deficiency issued to them, respondent determined income tax deficiencies of $10,587 and $5,674, respectively.

The second brother, Mr. Darwin R. Tobias, Sr., and his wife, Ms. Shirley I. Tobias, filed joint Federal income tax returns for each of the years in issue in their case, 1990, 1991, and 1993. In the notice of deficiency issued to them, respondent determined income tax deficiencies of $12,371, $9,841, and $6,055, respectively. Darwin and his wife resided in Halifax, Pennsylvania, when the instant petition was filed on their behalf.

Circa 1960, James and Darwin orally agreed to operate an animal farm business as partners, but they never reduced their agreement to writing. Their agreement was general and did not include specific terms regarding how they would operate the business. For example, they never agreed to a specific division of labor. Over the years James spent a disproportionately greater amount of time and effort developing and expanding the business than his brother, Darwin. Each of the brothers had independent means of earning a living, and neither received a salary for his

services to the business. It is not clear from the record whether they opened a bank account specifically for the business or whether they used an existing account, but it is clear that both of their signatures were required on checks drawn on the account.

The operation of the animal farm business took place primarily on land owned by James and his wife. Darwin also owned land that was farmed for the benefit of the animal farm business. In 1972, the brothers agreed that the business should pay rent for the use of each brother's personal land by the business. While Darwin often received his land rents, James frequently deferred his land rents until the business had the funds available to pay him.

In addition to using their land for business purposes, each brother occasionally made expenditures for the business with his own funds. Except for the reimbursement of some business expenses and the payment of land rents, neither brother received a distribution from the animal farm business. All profits were reinvested in the business.

In 1986, the brothers' relationship became acrimonious. James evicted Darwin from the business and prohibited him from coming onto the business premises. After his eviction, Darwin did not participate in the

business or receive a distribution of any kind from the business.  James continued to operate the animal farm business at least through December 31, 1993.

Following James' actions, on October 21, 1986, Darwin sued James in the Court of Common Pleas for Dauphin County, Pennsylvania (hereinafter State court), alleging that the business was an equally owned partnership.  Darwin sought dissolution of the partnership and an accounting.  See Tobias v. Tobias, No. 4583 (Ct. C.P. Dauphin County, Pa. July 7, 1992).  On July 7, 1992, the State court issued its opinion holding that the animal farm business was a partnership under Pennsylvania State law (hereinafter the 1992 State court opinion).  The State court found that Darwin had been "wrongfully excluded from the business" and was entitled to dissolution of the partnership and an accounting.  In considering the question whether the partnership was an equal partnership, the State court found that James' contributions to the partnership far exceeded Darwin's contributions and that an inequity would be visited on James if the profits of the business were shared equally.  The State court ordered that each partner be repaid his capital contributions before the profits of the partnership were divided equally between them.  The order of the State court stated as follows:

AND NOW, this 7 day of JULY, 1992, WE FIND that the business was operated on a partnership basis; the assets of the business are as set forth in this opinion. Plaintiff is entitled to dissolution of the partnership and an accounting. The profits will be shared equally after the partners are repaid their contribution as provided by the act.

Unless an appeal is filed within thirty (30) days the court will appoint a Master to determine the asset valuation and disposition of assets.

The State court entered a second opinion on January 6, 1997, after 16 days of hearings, resolving differences between the brothers over an account of the business that had been filed by James and excepted to by Darwin (hereinafter the 1997 State court opinion). In the 1997 State court opinion, the State court determined that James had made capital contributions to the partnership of $1,001,558.60, that Darwin had made capital contributions to the partnership of $2,320, and that the partnership had $23,311.87 in its bank accounts. The court ordered payment of the outstanding liabilities of the partnership totaling $23,335.47. The court also ordered the sale of partnership equipment at a public auction, with all profits from the sale to be deposited into the partnership bank account. The partnership equipment included various pieces of restaurant equipment, such as a popcorn machine and an ice cream freezer, and various pieces of agricultural or

farming equipment, such as a hay rake and a baler. Finally, the State court found that the partnership owned no land but that the value of certain fixtures and improvements to land occupied by the partnership was $144,234.

The State court ordered all partnership assets remaining after payment of partnership liabilities, including cash, to be distributed to James' estate "to repay on a dollar-for-dollar basis to the extent of such assets the contributions to capital made by James R. Tobias." The State court allocated none of the remaining partnership assets to Darwin. It is implicit in the order of the State court that the proceeds from the sale of the equipment would not equal James' disproportionately large capital contributions.

From 1965 until 1992, James treated the animal farm business as a sole proprietorship and reported the entire income from the business on his individual tax returns. After the State court found that the business was a partnership, James caused the partnership to file returns for the years 1990 through 1993. Darwin did not participate in the preparation or filing of the partnership returns.

The partnership returns filed by James report the following:

|  | 1990 | 1991 | 1992 | 1993 |
|---|---|---|---|---|
| Ordinary income | $75,321 | $49,662.62 | ($166) | $10,099 |
| Interest income | -0- | 753.71 | 190 | 1,015 |
| Long-term capital gain | -0- | -0- | -0- | 25,061 |
| Total income | 75,321 | 50,416.33 | 24 | 36,175 |
| Total assets | 171,769 | [1]164,956.00 | 166,836 | 200,135 |
| Total liabilities | 57,267 | [1]-0- | 1,856 | 56 |

[1] A balance sheet is not attached to the 1991 return submitted as an exhibit to the response of the Estate of James R. Tobias to respondent's and petitioner Darwin Tobias' cross-motions for summary judgment. This amount is the beginning of the year amount reported on the balance sheet attached to the 1992 return as Schedule L.

The partnership returns identify James and Darwin as 50-percent partners and allocate 50 percent of each distributive share item of the partnership to each of them. The partnership returns for 1992 and 1993 include Schedules K-1, Partner's Share of Income, Credits, Deductions, etc., which report identical capital accounts for each brother. The capital accounts reported on the Schedules K-1 for each brother for 1992 and 1993 are as follows:

| Year | Capital at Beginning of Year | Capital Contributed | Income | Withdrawals and Distributions | Capital at End of Year |
|---|---|---|---|---|---|
| 1992 | $82,478 | -0- | $12 | -0- | $82,490 |
| 1993 | 82,490 | $115 | 17,435 | -0- | 100,040 |

James and his wife included 50 percent of the part-nership's ordinary income and interest income for 1991 and 1993 in the gross income reported on their joint returns

for the years 1991 and 1993. They did not include in their gross income for 1993 any of the long-term capital gain realized by the partnership during 1993. The notice of deficiency issued to them states as follows:

> As it cannot be determined what the allocable share of such partnership income is for any of the partners for any of the years, all of the income has been allocated to each partner, thus increasing your taxable income a net $25,208 and $18,089 [sic] for taxable years ending December 31, 1991 and 1993, respectively.

Thus, the notice of deficiency issued to James and his wife has the effect of allocating to James 100 percent of the partnership's ordinary income and interest income for 1991 and 1993 and 50 percent of the partnership's long-term capital gain for 1993. In respondent's answer to the petition that was filed on behalf of James and his wife, respondent asserts that there is an increased deficiency due from James and his wife on the theory that 100 percent of the long-term capital gain realized by the partnership during 1993 should be allocated to James.

Darwin and his wife did not include any partnership income in the gross income reported on their joint returns for the years 1990, 1991, and 1993. The notice of deficiency issued to them states as follows:

As it cannot be determined what the allocable share of such partnership income is for any of the partners for any of the years, all of the income has been allocated to each partner, thus increasing your taxable income a net $37,661, $25,208 and $18,089 [sic] for taxable years ending December 31, 1990, 1991 and 1993, respectively.

Thus, the notice of deficiency issued to Darwin and his wife allocates to Darwin 50 percent of the ordinary income, interest income, and long-term capital gain realized by the partnership for the years 1990, 1991, and 1993.

Discussion

In its motion for summary judgment, the estate takes the position that respondent committed error by increasing James' taxable income by 50 percent of the partnership's income and, thus, by treating him as subject to tax on all of the partnership's income. According to the estate, the State court determined, consistent with Darwin's allegations, "that a 50-50 partnership did exist between James and Darwin with respect to the Lake Tobias Animal Farm." The estate argues that, notwithstanding "Darwin's eviction from active participation in the business", the partnership continued to exist during the years in issue for Federal tax purposes because there was no termination pursuant to section 708. Thus, according to the estate, partnership income for the years in issue must be allocated

equally to the partners, "in accordance with their respective partnership interests."

Darwin and his wife oppose the estate's motion for summary judgment. They argue that the partnership terminated in 1986 and that any income from the business after 1986, including the subject income, must be allocated entirely to James. In their cross-motion for summary judgment, they argue that "the facts and circumstances of the case require allocation of all income and expenses to James pursuant to the partners [sic] interest in the partnership test. (Regs. § 1.704-1(b)(1)(I) [sic])." They further argue that liquidation of the partnership, pursuant to the order of the State court, is evidence that James bore the economic benefit and burden of the partnership income. Accordingly, they argue that all of the income from the business should be allocated to James, or in the alternative, that the income should be allocated in accordance with the partners' capital contributions; i.e., 99.98 percent to James and .02 percent to Darwin.

Respondent also opposes the estate's motion for summary judgment and has filed a cross-motion for summary judgment in which respondent, like the estate, takes the position that the partnership income at issue in these cases must be allocated in accordance with the "partner's

interest in the partnership", pursuant to section 1.704-1(b)(3)(i), Income Tax Regs. Respondent disagrees, however, with the estate's assertion that the partners each have a 50-percent interest in the partnership, and instead argues that James has a 100-percent interest in the partnership. Thus, respondent contends that all of the income reported by the animal farm business for the years 1990 through 1993 should be allocated to the estate. In support thereof, respondent notes that, "up to 1994, James had contributed almost $1,000,000 more in capital to the partnership than Darwin." Respondent further notes that, "under applicable state law, James is entitled to a liquidation distribution of the amount by which his contributions exceed Darwin's before Darwin is entitled to any distributions." Finally, respondent notes that "the value of the partnership's assets in excess of its liabilities amounted to less than $150,000". Therefore, according to respondent, James bore the entire economic benefit and burden of the partnership income during the years in question and should be allocated all of the partnership income for the years in issue.

In effect, respondent acknowledges that the protective notice of deficiency issued to Darwin and his wife in which respondent adjusts their income for 1990, 1991, and 1993

to include 50 percent of the income of the partnership is inconsistent with respondent's position that all partnership income should be allocated to James. The memorandum in support of respondent's cross-motion for summary judgment states: "If and to the extent the respondent's motion is granted, the respondent will stipulate to a decision reducing Darwin's income accordingly."

The estate makes three arguments in opposition to the cross-motions for summary judgment filed by Darwin and respondent and in support of its position that respondent erred by allocating to James all of the partnership income for the years in issue. First, the estate reiterates its position that the income of the partnership for the years in question must be allocated in accordance with the "partner's interest in the partnership." According to the estate: "The state court expressly found in considering all relevant facts and circumstances that both James and Darwin owned a 50 percent partnership interest in the business." On that basis, the estate contends that the income of the partnership should be allocated to the partners equally.

Second, the estate argues, in the alternative, that such a 50-50 income allocation has substantial economic

effect.  The estate recognizes that, if a partnership agreement is silent as to how partnership income should be allocated, as is the case here, then income is allocated according to the partners' interests in the partnership and, in that event, the substantial economic effect test of section 704(b)(2) has no application.  Nevertheless, the estate is concerned by the statement in Darwin's cross-motion for summary judgment that "no provision exists in the partnership agreement for the restoration of a deficit in a partners [sic] capital account."  Because, in the estate's view, the Court could find that a 50-50 allocation does not have substantial economic effect, the estate includes a discussion of the substantial economic effect of such an allocation.

Third, contrary to respondent's position, the estate argues that a "50-50 income allocation is consistent with the requirements of the Internal Revenue Code under all of the undisputed facts and circumstances of this case."  In support of this argument, the estate notes that no distributions of income were made by the partnership during any of the years in issue and asserts that the income reported by the partnership during those years did not inure to James' benefit.  In this connection, the estate argues that the income reported by the partnership did not

increase the asset value of the partnership and any "distribution to James upon liquidation will be minimal." Furthermore, the estate argues that it is improper to use the 1997 State court opinion "with respect to an accounting of ownership of partnership assets under Pennsylvania state law to retrospectively reallocate income for federal income tax purposes for the calendar years 1990 through 1993."

A decision on a motion for summary judgment shall be "rendered if the pleadings, answers to interrogatories, depositions, admissions and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law."  Rule 121(b).  All Rule references are to the Tax Court Rules of Practice and Procedure.  The moving party bears the burden of proving that there is  no genuine issue as to any material fact. See Jacklin v. Commissioner, 79 T.C. 340, 344 (1982). All reasonable inferences must be drawn in favor of the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986); Naftel v. Commissioner, 85 T.C. 527, 529 (1985).  In these cases, each of the parties has filed a motion for summary judgment or a cross-motion for summary judgment, and we agree that there are no genuine

issues of material fact and that the cases are ripe for disposition on these motions.

Before addressing the substantive issues in these cases, we must address two preliminary matters. They are: (1) Whether respondent bears the burden of proof with respect to determining the partners' interests in the partnership, as claimed by the estate; and (2) whether the partnership was terminated for Federal income tax purposes before the years in issue, as claimed by Darwin.

The estate argues that respondent bears the burden of proving the partners' interests in the partnership on the ground that both Darwin and respondent rely on an affirmative defense. According to the estate, both Darwin and respondent take the position that the State court's findings with respect to a 50-50 partnership interest should not be used for Federal tax purposes for the years at issue "because such allocation would not have 'substantial economic effect' as contemplated by the [sic] I.R.C. §704(b)(2)."

In general, a determination made by the Commissioner in a notice of deficiency is presumed correct, and the burden of proof is on the taxpayer to show that the determination is wrong. See Rule 142(a). There are exceptions to this Rule under which the burden of proof

shifts to the Commissioner.  See id.  Under the Rules of this Court, an affirmative defense pleaded in the answer is one of the exceptions.  See Rules 142(a), 39.

An affirmative defense is described as follows:

> An affirmative defense is a legal defense to a claim, as opposed to a factual dispute as to an essential element of the claim.  It is a defense that does not controvert the establishment of a prima facie case, but that otherwise denies relief to the plaintiff.  It is a defense of avoidance, rather than a defense in denial. Thus an affirmative defense is one which seeks to defeat or avoid the plaintiff's cause of action, and avers that even if the petition is true, the plaintiff cannot prevail because there are additional facts that permit the defendant to avoid legal responsibility.  [61A Am. Jur. 2d, Pleadings, sec. 288 (1999); fn. ref. omitted.]

One difficulty we have with the estate's argument is that the estate does not explain what difference shifting the burden of proof to respondent would make in these cases.  We are not aware of any facts in dispute, and the parties ask us to decide these cases on the basis of a motion and cross-motions for summary judgment.

We have a number of other difficulties with the estate's position.  Suffice it to say that, even if the estate were correct that a defense based upon the lack of substantial economic effect is an affirmative defense, respondent does not rely on that defense in these cases. Respondent's position is that the allocation must be

determined in accordance with the partners' interests in the partnership pursuant to section 704(b)(1), on the ground that the partnership agreement does not provide an allocation of income. See sec. 704(b)(1). Respondent does not argue that the allocation of income must be based upon the partners' interests in the partnership pursuant to section 704(b)(2), on the ground that the allocation specified by the partnership agreement lacks substantial economic effect. See sec. 704(b)(2).

Furthermore, respondent's position, which is based upon all of the facts and circumstances of these cases, is that James' interest in the partnership was 100 percent during the years in issue, rather than 50 percent as claimed by the estate. In our view, respondent's position is not an affirmative defense, and we reject the estate's position that the burden of proof in these cases is shifted to respondent.

The second preliminary matter is whether the partnership terminated in 1986, as suggested by Darwin and his wife in their opposition to the estate's motion for summary judgment. The estate contends that the partnership did not terminate for Federal income tax purposes before the years in issue.

Section 708 governs termination of a partnership for Federal income tax purposes. Section 708 provides that a partnership shall be considered terminated only if: (1) No part of any business, financial operation, or venture of the partnership continues to be carried on by any of its partners in a partnership; or (2) within a 12-month period there is a sale or exchange of 50 percent or more of the total interest in partnership capital and profits. See sec. 708(b)(1). Section 708 provides that a partnership "shall be considered as continuing if it is not terminated." Sec. 708(a).

It is undisputed that after James excluded Darwin from the partnership in 1986, James continued to carry on the animal farm business until some time after December 31, 1993. It is also undisputed that neither James nor Darwin sold or exchanged his interest in the partnership. Therefore, we have no basis to find that either of the events specified by section 708 took place before 1994, such that the partnership terminated for Federal tax purposes before or during the tax years in issue.

Having disposed of the above preliminary matters, we turn to the principal issue for decision in these cases: the manner of allocating the partnership's income for the years in issue. In order to put this issue in context, we

recall the following statement from our opinion in <u>Vecchio</u>

<u>v. Commissioner</u>, 103 T.C. 170, 185-186 (1994):

> In determining his income tax, a partner must take into account his "distributive share" of each item of partnership income, gain, loss, deduction, and credit. Sec. 702(a). Each partner is taxed on his distributive share of the partnership income without regard to whether the amount is actually distributed to him. Sec. 1.702-1(a), Income Tax Regs.; see also <u>United States v. Basye</u>, 410 U.S. 441, 453 (1973). A partner's distributive share of partnership income or loss is to be determined by the partnership agreement, provided the allocation has substantial economic effect. Sec. 704(a). If the partnership agreement does not provide as to the partner's distributive share, or if the partnership agreement provides for an allocation that does not have substantial economic effect, then a partner's distributive share is determined by the partner's "interest in the partnership". Sec. 704(b). A partner's interest in the partnership is determined by taking into account all facts and circumstances. <u>Id.</u>

As suggested above, section 704 provides the framework for

determining a partner's distributive share of partnership

income, gain, loss, deductions, or credits and governs the

allocation of such partnership items. It provides as

follows:

> SEC. 704(a). Effect of Partnership Agreement.--A partner's distributive share of income, gain, loss, deduction, or credit shall, except as otherwise provided in this chapter, be determined by the partnership agreement.

> (b) Determination of Distributive Share.-- A partner's distributive share of income, gain, loss, deduction or credit (or item thereof) shall

be determined in accordance with the partner's interest in the partnership (determined by taking into account all facts and circumstances), if--

(1) the partnership agreement does not provide as to the partner's distributive share of income, gain, loss, deduction, or credit (or item thereof), or

(2) the allocation to a partner under the agreement of income, gain, loss, deduction or credit (or item thereof), does not have substantial economic effect.

None of the parties to the instant cases claims that there is a partnership agreement under which either partner's distributive share of income, gain, loss, deduction, or credit can be determined, as provided by section 704(a). This is consistent with the fact that James and Darwin did not enter into a written partnership agreement and the fact that their oral agreement was merely an informal, general agreement to operate an animal farm and did not contain any specific terms.

Because there is no partnership agreement in these cases, there is no need to address the estate's "alternative" argument that a 50-50 allocation of partnership income has substantial economic effect. See Brooks v. Commissioner, T.C. Memo. 1995-400; Mammoth Lakes Project v. Commissioner, T.C. Memo. 1991-4.

All of the parties to the instant cases take the position that the subject income must be allocated in

accordance with each partner's interest in the partnership, as provided by section 704(b)(1). Accordingly, we must determine the interests of James and Darwin in the subject animal farm partnership.

The regulations promulgated under section 704 define the phrase "partner's interest in the partnership" as the "manner in which the partners have agreed to share the economic benefit or burden (if any) corresponding to the income, gain, loss, deduction, or credit (or item thereof) that is allocated." Sec. 1.704-1(b)(3)(i), Income Tax Regs. The regulations also provide that the determination of a partner's interest shall be made by taking into account all facts and circumstances relating to the economic arrangement of the partners. See sec. 1.704-1(b)(3)(i), Income Tax Regs. Specifically, section 1.704-1(b)(3)(ii), Income Tax Regs., provides that the following four factors shall be considered in determining a partner's interest in the partnership: (1) The partners' relative contributions to capital; (2) the partners' interests in economic profits and losses; (3) the partners' interests in cash-flow and other nonliquidating distributions; and (4) the rights of the partners to distributions of capital upon liquidation of the partnership. See Vecchio v.

Commissioner, supra at 193; PNRC Ltd. Partnership v.
Commissioner, T.C. Memo. 1993-335.

The first factor, the partners' relative capital contributions, was discussed in the 1997 State court opinion. The State court found that James' capital contributions totaled $1,001,568.60 and Darwin's contributions totaled $2,320. The parties to the instant cases do not challenge the findings of the State court regarding the capital contributions of each partner.

The 1997 State court opinion does not set forth the dates on which James made his contributions, but from our review of the 1992 and 1997 State court opinions, we conclude that a substantial percentage of James' contributions, at least $700,000, was made before the years in issue. According to the 1997 State court opinion, all of Darwin's contributions, in the aggregate amount of $2,320, were made before the years in issue.

The second factor to consider in determining a partner's interest in the partnership is the partner's interest in economic profits and losses. The 1992 State court opinion states that the partners would share the profits of the business after they were repaid their capital contributions.

The third factor to consider in determining a partner's interest in the partnership is the partner's interest in cash-flow and other nonliquidating distributions. Although all of the profits of the business were reinvested in the business, James and Darwin were reimbursed for various business expenses that they personally incurred. However, after his eviction in 1986, Darwin did not personally incur any business expenses because he did not participate in the business. Thus, for the years in issue, Darwin did not have any interest in the cash-flow or other nonliquidating distributions of the business.

The fourth factor to consider in determining a partner's interest in the partnership is the partner's right to distributions of capital upon liquidation of the partnership. This factor requires that we determine how the partnership would have been liquidated in each of the years in issue. This factor is directly related to the capital contributions of each partner. As discussed earlier, the State court determined that James' contributions, $1,001,568.60, substantially exceeded Darwin's contributions, $2,320, and our review of the State court opinions suggests that James had contributed

a substantial amount of the total, at least $700,000, before the years in issue.

Furthermore, the partnership returns filed by James report total assets for 1990 through 1993 of $171,769, $164,956, $166,836, and $200,135, respectively. This is corroborated by the 1997 State court opinion, which found that the value of the assets of the partnership was in approximately the same order of magnitude. Thus, the value of partnership assets did not approach the total of James' disproportionately large capital contributions for any of the years in issue. Accordingly, if the partnership had been liquidated at any time during the years in issue, all of the partnership assets would have been distributed to James. It is evident, therefore, that during each of the years in issue James bore the economic benefit of 100 percent of the income realized by the partnership. See sec. 1.704-1(b)(3), Income Tax Regs.

The estate argues that "the state court's determination that James and Darwin each own a 50 percent interest in the partnership is applicable for allocation of income for Federal income tax purposes pursuant to I.R.C. § 704(b)(1)." In our view, the estate disregards the fact that under the State court determination profits would be shared equally only "after the partners are repaid their

contribution as provided by the act."  In discussing the partners' rights in the partnership, the 1992 State court opinion focuses on the fact that James had made disproportionately greater capital contributions and on the inequity of dividing partnership profits equally before he was repaid.  The 1992 State court opinion states the following:

> Under the partnership act above [referring to 15 Pa. Cons. Stat. § 8331] each partner is repaid his contribution whether by way of capital or advances to the partnership property.  The court found that James' contribution [sic] far exceeded contributions made by Darwin.  Hence it appears that an inequity would be visited on James if the partners share equally in profit, however the provision allowing repayment of advances to the partnership will level the playing field.

> *    *    *    *    *    *    *

> After each partner is compensated for his contribution, ie, capital advancement or property to the partnership distribution of profits on an equal basis would seem equitable.  [Tobias v. Tobias, No. 4583 (Ct. C.P. Dauphin County, Pa. July 7, 1992).]

The 1997 State court opinion summarizes Pennsylvania law as "holding that the repayment of capital investments before distribution of any profits is an essential element of every partnerships agreement implied as a term of law." The 1997 State court opinion effects the 1992 State court opinion by determining the partnership's assets and

liabilities, and the capital contributions of each partner, and by directing that after payment of the partnership's liabilities, "all other assets of the partnership shall be delivered to the Estate of James R. Tobias to repay on a dollar-for-dollar basis to the extent of such assets the contributions to capital made by James R. Tobias."

We do not interpret the State court opinions as determining that "James and Darwin each own a 50-percent interest in the partnership" during the years in issue. Rather, the State court opinions determined the appropriate distributions to the partners upon the dissolution and liquidation of the partnership, on the basis of State law, the relative capital contributions of the partners, and principles of equity.

It appears that the estate seizes on the statements in the State court opinions that "the profits will be shared equally" and asks this Court to find that each of the partners held a 50-percent interest in the partnership for purposes of section 704(b)(1). In effect, the estate asks us to make that finding without considering the relative capital contributions of the partners or the other factors listed in section 1.704-1(b)(3)(ii), Income Tax Regs.

Although the estate does not discuss the four factors listed in section 1.704-1(b)(3)(ii), Income Tax Regs., the

estate argues that a "50-50 income allocation is consistent with the requirements of the Internal Revenue Code under all of the undisputed facts and circumstances of this case." We consider the facts and circumstances the estate relies on.

First, the estate argues that the partnership income for the years in issue did not inure to the benefit of James. According to the estate, this is shown by the fact that the asset value of the partnership was not increased by the amount of income reported by the partnership, and by the fact that any distribution to James upon liquidation of the partnership would be minimal. Second, the estate argues that respondent "is improperly attempting to use a state court decision rendered in 1997 with respect to an accounting * * * to retrospectively reallocate income for federal income tax purposes for the calendar years 1990 through 1993."

Contrary to the estate's argument, the net asset value of the partnership increased each year by the amount of partnership income. In the following schedule, we have computed the net asset value of the partnership using the balance sheets filed with the partnership returns as Schedule L, and we have compared the annual increases in net asset value to the income reported:

|                          | 1990      | 1991        | 1992      | 1993      |
|--------------------------|-----------|-------------|-----------|-----------|
| Total assets             | $171,769  | [1]$164,956 | $166,836  | $200,135  |
| Total liabilities        | 57,267    | [1]-0-       | 1,856     | 56        |
| Net asset value (NAV)    | 114,502   | 164,956     | 164,980   | 200,079   |
| Increase in NAV from previous year | n/a | 50,454 | 24 | 35,099 |
| Total partnership income[2] | 75,321 | 50,416      | 24        | 36,175    |

[1] A balance sheet is not attached to the 1991 return submitted as an exhibit to the response of the Estate of James R. Tobias to respondent's and petitioner Darwin Tobias' cross-motions for summary judgment. This amount is the beginning of the year amount reported on the balance sheet attached to the 1992 return as Schedule L.

[2] Total partnership income is the sum of ordinary income, interest income, and capital gain reported on the partnership returns.

The above schedule shows a direct correlation between the increase in the net asset value of the partnership for each year and the amount of income reported. Because the State court ordered that all remaining assets of the partnership be distributed to James, we agree with respondent that the income of the partnership for the years in issue inured to James' benefit.

Furthermore, it is not evident that any distribution to James or to his estate upon liquidation of the partnership would be minimal. Under the 1997 State court opinion, after the partnership's liabilities are paid, the estate is to receive various real estate improvements and fixtures valued by the State court at $144,234 and other assets. Moreover, even if the amount of the distribution were

"minimal", a partner is subject to tax on his share of partnership income whether or not such income is actually distributed to him.  See United States v. Basye, 410 U.S. 441, 453-454 (1973); sec. 1.702-1(a), Income Tax Regs.

We also reject the estate's argument that respondent erred by allocating partnership income for 1990 through 1993 on the basis of the 1997 State court opinion.  In these cases, it is necessary to determine the interest of each brother in the partnership for purposes of section 704(b)(1), and the determination must be made by taking into account all of the facts and circumstances relating to the economic arrangement of the partners.  See sec. 1.704-1(b)(3)(i), Income Tax Regs.  We believe that respondent has correctly reviewed the effect of the 1997 State court opinion and the other facts and circumstances relating to the financial arrangements of the brothers in determining their interests in the partnership.

On the basis of the four factors listed in section 1.704-1(b)(3)(ii), Income Tax Regs., and all the facts and circumstances of these cases, we find that during each of the years in issue James had a 100-percent interest in the partnership income and Darwin had a zero interest in the partnership income.  Accordingly, we agree with respondent and Darwin that 100 percent of the income of the

partnership during the years in issue should be allocated to James.

On the basis of the foregoing,

Orders will be entered denying petitioners' motion for summary judgment filed in the case at docket No. 19756-97, granting petitioners' cross-motion for summary judgment filed in the case at docket No. 19757-97, and granting respondent's cross-motion for summary judgment filed in the case at docket No. 19756-97, and decisions will be entered for respondent in the case at docket No. 19756-97, and for petitioners in the case at docket No. 19757-97.